WESTERN AUTOMOBILE CASUALTY CO. et al. v. BURNELL et al.—71 S. W. (2d) 474.

Middle Section. December 2, 1933.

Petition for Certiorari denied by Supreme Court, May 19, 1934.

Anderson, Aust, McGugin & Evans, of Nashville, for plaintiffs in error.

Walker & Hooker, of Nashville, for defendants in error.

DeWITT, J. In these actions, tried together, judgments were rendered, upon verdicts of a jury, against J. W. Ford, the owner and operator, as a public carrier, of an automobile bus, as follows: In favor of Mrs. C. J. Burnell for $25,000; in favor of C. J. Burnell for $2,500; and in favor of J. A. Murray for $500, for personal injuries sustained by these persons in a collision which occurred on September 24, 1927. Of the judgments the following sums were also awarded against the Western Automobile Casualty Company, as follows: For Mrs. C. J. Burnell, $5,000; for C. J. Burnell, $2,500; and for J. A. Murray, $500—upon a policy of liability insurance to the state of Tennessee, for the use and benefit of J. W. Ford, doing business as Ford Bus Company. The policy had been duly issued and filed with the county court clerk of Hamilton county under the requirements of chapter 729 of the Private Acts of 1925. On the day of the collision the bus was being regularly operated for the transportation of passengers between Manchester, in Coffee county, and Chattanooga, in Hamilton county. The accident occurred on

the highway in Coffee county between the villages of Hillsboro and Pelham.

Murray and Mrs. Burnell were riding in a Stutz automobile with Mr. Burnell as the driver, returning from Chattanooga to Nashville after they had witnessed a football game, of which Mr. Burnell had taken some photographs as an employee of the Nashville Tennessean. The bus was being driven southward toward Chattanooga by one Grady Ivey, an employee of its owner, Ford. There is substantial evidence to support the finding that the proximate cause of the collision and injuries was negligence on the part of Ivey in driving the bus on a straight road to his left and striking the Burnell car as it was being driven in the opposite direction on its lawful side of the road.

These actions were brought in Davidson county by summons issued to the Western Automobile Casualty Company and J. W. Ford. Service of the summons was acknowledged by the state insurance commissioner in behalf of the casualty company. Ford was not in Davidson county. He was a citizen and resident of Hamilton county. Upon return being made that Ford was not to be found in Davidson county, a counterpart summons was issued for him and was served upon him in Hamilton county. Pleas in abatement to the jurisdiction of the Davidson circuit court were filed after the declarations in the three cases were filed. These were stricken on motions of the plaintiffs. The defendants then demurred to the declarations, challenging the jurisdiction of the court. These demurrers were overruled. Thereupon each defendant interposed a plea of not guilty in each case; and to the declarations of C. J. Burnell and J. A. Murray they interposed identical special pleas in bar. These special pleas in bar were stricken upon motions of the plaintiff. Exceptions to all these actions by the court were duly taken, and the correctness of them is challenged by appropriate assignments of error.

In each of these pleadings there were embodied the defenses that the venue of the action was not in Davidson county; that a direct action would not lie against the casualty company on its bond, or policy, for damages resulting from an accident occurring in a county having a population of less than 110,000 inhabitants; that chapter 729 of the Private Acts of 1925 has no application to an accident occurring in Coffee county, which had a population of less than that number of inhabitants; that to construe said act otherwise by maintaining a suit in Davidson county jointly against the casualty company and Ford, a resident of another county, would render the act unconstitutional and void under article 11, section 8, and article 1, section 8, of the Constitution of the state of Tennessee; and that each plaintiff sought to maintain his suit on tort against Ford and on contract against the casualty company.

Hamilton county, in which was one of the regular termini of the

bus here in question, contained more than 110,000 inhabitants. The pertinent sections of chapter 729 of the Private Acts of 1925, including the caption, are as follows:

"An Act entitled An Act to require persons, firms or corporations operating motor vehicles for the transportation of persons or property for hire in counties having a population of more than one hundred ten thousand, by the Federal Census of 1920, or any subsequent Federal Census to execute, file and keep in force bonds or insurance policies for the protection of the public and to make it a misdemeanor to operate such vehicles without providing said bonds or insurance policies and to make a misdemeanor for County Court Clerks to wilfully violate the provisions of this Act, to define the meaning of the word taxi-cab, to provide for the issuance of license, and the bringing of suits for persons injured by motor vehicles coming within the provisions of this Act, and defining such vehicles and classifying same as common carriers, and providing notice by the Secretary of State, and County Court Clerks.

"Sec. 2. Be it further enacted, That in all counties having a population of more than 110,000 by the Federal Census of 1920, or any subsequent Federal Census, it shall be unlawful for any person, firm or corporation to operate any motor vehicle, not running on fixed tracks, for the transportation of passengers or property for hire, between fixed termini, or over a regular route even though there may be periodic or irregular departures from said termini, without executing bond or providing insurance as provided in Section 3, except such taxicabs or motor vehicles as are operated principally within the limits of one municipality where, by ordinance, a Bond or insurance policy is required, and has been executed as indemnity for the protection to the public for injury to persons or property.

"Sec. 3. Be it further enacted, That every person, firm or corporation operating public motor conveyances as aforesaid, shall execute, file and keep with the Clerk of the County Court of the county in which the business, or any part thereof, is to be carried on, a bond, or insurance policy, which shall be renewed annually, payable to the State of Tennessee, with surety approved by the Judge, or Chairman of the County Court, in the sum of $300 for each car operated in freight service, and $5,000 for each car operated in passenger service, which said bond or insurance policy shall be for the benefit of the public and shall bind the principal and obligor or insurer to make compensation for injury to persons whether passengers or not, and loss of, or damage to property, resulting from the negligent operation of such motor vehicles, and any person injured, or whose property is damaged by such operation of said vehicle, shall have the right to institute suit jointly in the courts of this State against the owner, or operator, of said vehicle and the obligor or insurer."

In Chattanooga Dayton Bus Line v. Burney, 160 Tenn., 294, 23 S.

W. (2d), 669, 671 (action arising out of an accident occurring in Hamilton County), the constitutionality of this act, as a police regulation, was sustained, the classification of counties in which a bond must be furnished being held to be reasonable on the ground that the necessity for regulation of traffic on the public highways is directly affected by the density of population. The court said:

"It is a matter of common knowledge that the number of motor vehicles on the highways steadily increases as the traveler approaches the outskirts of the four largest cities of the state, located within the counties to which the statute applies. With the increase of traffic, the danger and likelihood of accidents increase. The statute does not alter or affect the measure of the liability of the wrongdoer, but is designed only to make more certain that the injured may secure compensation. The benefits of the statute do not accrue only to residents of the counties affected, but may be claimed by all persons who visit the centers of population and there suffer wrongful injury within the application of the statute. These and other reasonably conceivable considerations must be assumed to have impelled the Legislature to consider this regulation necessary, in the centers of population, for the protection of the public, and unnecessary elsewhere in the state. . . .

"We are not able to hold that the classification made by the statute is arbitrary. We think it based upon reasonable differences in the effect of the regulated business on the safety of the traveling public, when conducted in the counties of dense population and when conducted in the smaller counties."

Preceding this discussion, the court said in the opinion:

"The application of the statute is expressly limited to the operation of motor vehicles in 'counties having a population of more than 110,000 by the Federal Census of 1920, or any subsequent Federal Census.'"

This court has no jurisdiction over the constitutional question presented (chapter 100, Acts of 1925), but if the question is not determinative or even material, that is, if in these causes the act may be properly construed as not applying to accidents out of which they arose, the constitutional question is immaterial. Kemp v. Caruthers, 11 Tenn. App., 201.

The bond, or policy, sued on limited the liability of the casualty company to the use of the bus for the transportation of passengers for hire while operating between Chattanooga and Manchester, and Chattanooga and Decatur, Tenn. It further provides: "This insurance shall be due and payable to the Assured when the amount of any claim or loss covered by this Policy shall have been fixed and rendered certain, either by final judgment against the Assured, or by agreement between the parties with the written consent of the Company. . . ." It contains no specific recital that it was issued

pursuant to the requirements of the aforesaid act of 1925. However, it was filed with the county court clerk of Hamilton county in compliance with the act. It contains no provision giving to any person injured by the operation of the vehicle the right to institute suit thereon against the insurer. Of course, the statute gives such right of action for such injuries as it includes. If it applies to accidents occurring in counties having less than 110,000 inhabitants, there is no merit in the contention that a joint action cannot be maintained against the owner and the insurer, for the statute plainly affords such right of action. The point is then made that, if the act was intended to apply to such accidents, it would impose an unconstitutional discrimination as enabling plaintiffs suing owners of motor vehicles operated for hire that then had liability insurance, when plaintiffs suing owners of vehicles not for hire could not show that they had such insurance. As aforesaid, this question is immaterial if the act does not apply to the operation of motor vehicles in counties having a population of less than 110,000 by the federal census of 1920, or any subsequent federal census.

The trial judge held that these actions were maintainable against the casualty company because of the recital in the policy that the automobile described therein would be used for operation between Chattanooga and Manchester. It is only by virtue of the statute that an action on the policy would lie; and, if such action is restricted to an accident occurring in Hamilton county, the aforesaid recital would not extend the right of action as claimed. As thus restricted, the plaintiff could neither sue the insurer nor show that the owner had insurance, when the accident occurred in a county having less than 110,000 inhabitants. These cases are distinguished from Kemp v. Caruthers, supra, in which the policy described the automobile as principally used, maintained, and garaged in Lebanon and its vicinity, and conferred upon a person injured a joint right of action against the assured and the insurance company. The vehicle was operated as a public carrier between Lebanon and Nashville.

In our opinion, the decision in Chattanooga Dayton Bus Line v. Burney, supra, is in effect that chapter 729 of the Private Acts of 1925, in its provision for a right of direct action on the required insurance policy, is applicable only where the cause of action arose in a county of at least 110,000 population. The language quoted from the opinion in that case is not reasonably susceptible of any other interpretation, for it is that "the application of the statute is expressly limited to the operation of motor vehicles," in such counties. The design of the statute, as stated, is to make more certain that the injured may secure compensation when the injury occurred in a county of denser population, in which the danger of injury is greater as the number of vehicles operated is greater.

The caption of the act recites that it is an act to require persons,

firms or corporations operating motor vehicles for the transportation of persons or property for hire, in counties having population of more than 110,000, to file and keep in force the bonds or insurance policies, and to provide for the bringing of suits for persons injured by motor vehicles coming within the provisions of this act. In section 2 it is declared that, in all counties having a population of more than 110.000, it shall be unlawful to operate such motor vehicle for the transportation of passengers or property for hire without executing bond or providing insurance, as provided in section 3. In section 3, every person, firm, or corporation operating such public motor conveyances is required to execute, file, and keep with the clerk of the county court of the county in which the business, or any part thereof, is to be carried on. such bond or insurance policy, which shall bind the principal and obligor or insurer to make compensation for injury to persons, whether passengers or not, and loss of or damage to property, resulting from the negligent operation of such motor vehicles; and the person injured or whose property is damaged by such operation of said vehicle is given the right to institute suit jointly against the owner or operator of said vehicle and the insurer. It is plain that the act is intended to limit the insurance to the operation of motor vehicles for hire in counties having population of more than 110,000, and that it is only when a person is injured or his property is damaged by the operation of such vehicle within such county that a cause of action can arise under the act directly against the insurer and jointly against the owner or operator.

The pleas and demurrers should have been sustained.

 This conclusion is determinative of the appeal in these causes, for the circuit court of Davidson county had no jurisdiction over them. The actions having been brought in a county in which the court had no jurisdiction, the whole proceedings were void and of no effect, and the judgments are void and without validity. Sweet v. Electric Light Company, 97 Tenn., 252, 36 S. W., 1090. Under Shannon's Code, section 4526 (chapter 25, section 3, Acts of 1820, Code, section 8653), the original process must be served upon a real and material defendant in the county, before the counterpart can be issued to other counties; for, in transitory actions, it is the service of the writ of summons in the county where the suit is instituted which gives the court jurisdiction of the person. The aforesaid section admits of no evasion of its spirit and intent by substituting a merely nominal, instead of a real, defendant in the original writ. Yancey v. Marriott, 1 Sneed, 28. A party against whom the law affords no right of action in the suit is not a real or material defendant. Achy v. Holland, 8 Lea, 510. The test is as to the right of action, not as to the liability of such defendant. 50 C. J., 451, and cases cited. In 27 R. C. L., 805, the applicable rule is stated:

"In every case the true test to determine whether or not the venue

is proper, so that the summons may be issued to another county, is whether the defendant served in the county where the suit is brought is a bona fide defendant to the action and whether his interest in the result of the action is in any manner adverse to that of the plaintiff with respect to the cause of action against the other defendants.''

It results that the judgments appealed from must be reversed, the verdicts set aside, and the suits dismissed at the cost of the defendants in error. The costs in the circuit court will also be adjudged against the sureties on their prosecution bonds.

Faw, P. J., and Crownover, J., concur.