24499. LaHATTE *et al.* v. WALTON.

DECIDED MARCH 14, 1936.

*Thomas M. Stubbs, Neely, Marshall & Greene, Edgar A. Neely Jr.,* for plaintiffs in error.

*Hewlett & Dennis,* contra.

SUTTON, J.   This case grew out of a collision between a public-carrier motor truck of the defendants, LaHatte, Loeb, and Jones, doing business under the name of the Chattanooga-Atlanta Motor Freight Line, and the plaintiff's automobile, in which the plaintiff received certain personal injuries which he alleged were caused by the negligence of the driver of the defendants' motor truck, "in failing to operate said truck on the right-hand side of the road, . . in failing, upon meeting the car in which petitioner was riding which was traveling in the opposite direction, to turn to the right of the center of the highway, which was a violation of state law," and "in failing, in rounding the curve, to keep said truck as far to the right on the highway as was reasonably possible," it being set up that in rounding a curve where the collision occurred the defendants' truck was being operated on the left-hand side of the road, and continued to be so operated until it crashed into the plaintiff's automobile which was being operated on its extreme right-hand side of the highway.   The Bankers Indemnity Insurance Company, the insurance carrier, with whom the other defendants were bonded or insured as required by section 5 of the motor common-carrier act of 1929, was sued jointly with such other defendants.   The defendants filed separate demurrers on the ground that no cause of action was stated, because the petition was multifarious and duplicitous in that there was a misjoinder of parties defendant and of causes of action, because there was no joint liability between the insurance company and the other defendants.   The defendants moved also to strike the insurance company from the case, and to purge the pleadings of all reference to said company.   Basing his ruling on authority of *Laster* v. *Maryland Casualty Co.,* 46 *Ga. App.* 620 (168 S. E. 128), the judge

overruled the demurrers and the motion to strike, and the defendants excepted pendente lite. The trial resulted in a verdict for $8000 in the plaintiff's favor against all of the defendants. The defendants moved for a new trial on the general grounds, and by amendment added sixteen special grounds in which they assigned error on certain excerpts from the charge of the court to the jury, and on failure to give in charge certain requested instructions. The court overruled the motion for new trial, and the defendants excepted, assigning error also on the rulings excepted to pendente lite.

Section 5 of the motor common-carrier act of 1929 is identical with section 7 of the motor common-carrier act of 1931 (Code of 1933, § 68-612), except as to the amount of the bond or indemnity insurance referred to therein, and is as follows: "No certificate shall be issued or continued in operation unless the holder thereof shall give bond, with adequate security, for the protection, in case of passenger vehicles, of the passengers and baggage carried and of the public, against injury proximately caused by the negligence of such motor carriers, its servants or agents, and, in cases of vehicles transporting freight, to secure the owner or person entitled to recover therefor against loss or damage to such freight, for which the motor carrier may be legally liable, and for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants or agents. The commission shall approve, determine, and fix the amount of such bonds, in a sum of not more than $10,000 for any one accident, casualty, or mishap, and not more than $5000 for any one injured or damaged party or claimant, and shall prescribe the provisions and limitations thereof; and such bonds shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury or loss protected thereby. The commission may, in its discretion, allow the holder of such certificate to file in lieu of such bond a policy of indemnity insurance in some indemnity-insurance company authorized to do business in the State of Georgia, which policy must substantially conform to all of the provisions hereof relating to bonds, and must likewise be approved by the commission. The commission shall have power to permit self-insurance in lieu of a bond or policy of indemnity insurance, whenever, in its opinion, the financial ability of the

motor carrier warrants." Acts 1929, pp. 293, 297. The plaintiff's suit was brought against the motor-carrier defendants and against the insurance carrier under this provision of the act of 1929; and the question raised by the demurrers and the motion to strike is strenuously urged and insisted on by defendants, and is controlling in this case. This question was certified to the Supreme Court by this court; and the Justices thereof, being evenly divided on whether to answer in the affirmative or negative, returned the question to this court without answer. *LaHatte* v. *Walton,* 181 *Ga.* 785 (184 S. E. 278). The question is as follows: "Can a joint action at law be maintained against a motor common carrier and against the indemnity company with whom such motor common carrier has procured a policy of indemnity insurance for the bene- ·fit and protection of the public against injuries caused proximately by the negligence of such motor common carrier, its servants or agents, by a person who has been injured by the alleged negligence of the driver of a motor common-carrier bus belonging to such motor common carrier, in driving the bus into an automobile driven by the plaintiff, the policy of indemnity insurance being procured by the defendant motor common carrier pursuant to the provisions" of the above section of said act of 1929? Even a casual observation will disclose that there is no practical difference in the wording and in the intent and meaning of the provisions of section 5 of the act of 1929, involved in this case, and the corresponding provisions of section 7 of the motor common-carrier act of 1931, which were involved and dealt with in *Laster* v. *Maryland Casualty Co.,* supra. The 1931 law superseded the 1929 act, but the policy of insurance was issued to the defendants in this case and the collision resulting in the injury to the plaintiff occurred before the enactment of the 1931 act, and hence were under the motor com- mon-carrier act of 1929. Section 7 of the act of 1931 (Code of 1933, § 68-612) is as follows: "No certificate shall be issued or continued in operation unless the holder thereof shall give and maintain bond, with adequate security, for the protection, in case of passenger vehicles, of the passengers and baggage carried, and of the public, against injury proximately caused by the negligence of such motor common carrier, its servants or agents; and in cases of vehicles transporting freight, to secure the owner or person en- titled to recover therefor against loss or damage to such freight

for which the motor common carrier may be legally liable; and for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants or agents. The commission shall approve, determine, and fix the amount of such bonds, and shall prescribe the provisions and limitations thereof, and such bonds shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury or loss protected thereby. The commission may, in its discretion, allow the holder of such certificate to file in lieu of such bond a policy of indemnity insurance in some indemnity insurance company authorized to do business in this State, which policy must substantially conform to all of the provisions hereof relating to bonds, and must likewise be approved by the commission. The commission shall have power to permit self-insurance in lieu of a bond or policy of indemnity insurance, whenever, in its opinion, the financial ability of the motor carrier warrants." Acts 1931, pp. 199, 203.

The requirements of the corresponding provisions of these two acts being identical, and the purpose and object sought to be obtained by their enactment by the General Assembly being the same, that is, to protect passengers, shippers, and the public from damage to their property or themselves by motor carriers, the construction placed upon such provisions of the 1931 act by this court in the *Laster* case, supra, is direct authority and will be followed by this court in applying and construing such provisions of the 1929 act. In the *Laster* case, where section 7 of the act of 1931 was involved and applied, this court held: "This section provides first for the giving of a bond for the protection of passengers and their baggage, and of the public, against injury, proximately caused by the negligence of such motor common carrier, and next to secure the owner or person entitled to recover therefor against loss or damage to freight, and for the protection of the public. The section further prescribes that such bond shall be for the benefit of, and subject to suit or action thereon by any person who shall sustain actionable injury protected thereby, meaning personal injury, and also that such bond shall be for the benefit of and subject to suit or action thereon by any person who shall sustain an actionable loss of his baggage or property for which the motor company may be legally liable under the bond. The word 'injury'

seems to refer to the person, and the word 'loss' to baggage or property. This section still further provides that the commission may allow in lieu of such bond a policy of indemnity insurance. To indemnify whom? Why does this section require a bond or policy of indemnity insurance? Is it required for the benefit of the motor carrier? We think not. Then it must be required for the benefit of the passengers and the public. The passengers and the public being the beneficiaries which the statute seeks to protect and insure, we think the indemnity-insurance policy required by the statute is one of insurance against liability, and not insurance against loss by the common carrier. . . It seems to us that the legislature had also in mind obviating the necessity for double litigation, for it gave the commission the right to fix the amount of the bond and to prescribe the provisions thereof. The motor carrier could not prescribe the provisions of the bond, and was given no discretion in the matter; for the act was not seeking to have it insured against loss, but was seeking to protect passengers and public against injuries caused by the negligence of the motor carrier. It may be said that the jury would give a larger verdict for the plaintiff if the insurance company was made a party defendant. Since the law requires a bond, the jury would presumably know that such was the law in any event. . . The rule that 'a cause of action arising ex contractu and a cause of action arising ex delicto can not be joined in the same suit' does not apply in the case at bar. . . We hold that the plaintiff had the right, under the statute in question, to bring his action jointly against the Maryland Casualty Company, insurer, and the bus company." On rehearing the court further held "The contention in the motion for a rehearing that the result in this case might be different because a policy of indemnity insurance was given, and not a bond, is not sound. One of the provisions of the bond is that such bond shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury thereby. The act further provides that in lieu of said bond a policy of indemnity insurance may be filed, which policy must substantially conform to all the provisions of the bond. Assuming that the commissioner did his [commission did its] duty (followed the statute), the contract in this case is what the statute prescribes; and whether the instrument be in the form of a bond or of a policy

of indemnity insurance, we hold that it was the legislative intent to provide by this statute that one direct action could be maintained against the carrier and the insurance company."

It is true that as a general rule, under the Code of 1933, § 3-113, an action ex contractu can not be joined with an action ex delicto; but this is a mere rule of procedure which the legislature could change with reference to any class of cases that it so desired; and when that body passed the motor common-carrier act of 1929, it is manifest that it did intend to change this rule as to all cases that might arise under the provisions of section 5 of that act. This case is brought under the provisions of that act; and therefore we are of the opinion that it was proper to join the insurance carrier as a party defendant with the tort-feasors. So decisions like *Willis* v. *Galbreath,* 115 *Ga.* 793 (42 S. E. 81), and *Cantrell* v. *National Surety Co.,* 46 *Ga. App.* 202 (167 S. E. 314), which were based on the general law and not on a special statute, are not applicable.

Counsel for the defendants state in their brief: "Had the Georgia motor-vehicle act of 1929 provided for 'liability insurance' instead of 'indemnity insurance' as was done in the Tennessee act (Western Automobile Casualty Co. *v.* Burnell, 17 Tenn. App. 687 (71 S. W. 2d, 474), we believe the decision in the *Laster* case would be tenable." Under the express provisions of section 5 of the act of 1929, the idemnity-insurance policy was given in lieu of the bond provided for therein; and we are of the opinion that under the terms of this section of said act a joint action is maintainable against the motor common carrier and its insurance carrier on the policy of insurance given under this section, the same as though a bond had been given and the suit were on such bond. To hold otherwise would be to give to this statute a meaning and purpose different from that which the act itself expresses. It seems to be a well-settled principle of law that "Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute." 9 C. J. 34, § 56. For cases involving similar statutes and reaching

the same result as in this case, see Harrison v. Southern Transit Cor., 192 N. C. 545 (135 S. E. 460); Hodges v. Wells, 226 Ala. 558 (147 So. 672); Milliron v. Dittman, 180 Cal. 443 (181 Pac. 779); Stephenson v. List Laundry & Dry Cleaners, 182 La. 383 (162 So. 19); Piper v. American F. & C. Co., 157 S. C. 106 (154 S. E. 106); Thompson v. Bass, 167 S. C. 345 (166 S. E. 346), and many others. In decisions like Grasso v. Cannon Ball Motor Freight Lines (Tex. Com. App.), 81 S. W. (2d) 482, holding that the motor carrier must be sued and its liability fixed before the indemnity company could be sued, the statute under which the bond was given expressly provided that a judgment against the carrier must be first obtained. It is true that the North Carolina act was later so amended as to provide that a judgment must be first obtained against the carrier, and that then the insurance company would be liable for the judgment and costs. Brown v. Brevard Auto Service Co., 195 N. C. 647 (143 S. E. 258). The amendment to the act did not lessen the force of the previous decision in Harrison v. Southern Transit Co., supra, as persuasive authority in the case at bar. The fact that the amount sued for exceeds the amount of the indemnity policy, and the amount for which the indemnity company is legally liable under the motor common-carrier act, does not render the petition subject to general demurrer, or to demurrer on the ground of a misjoinder of parties or causes of action. This could be reached by an appropriate special demurrer, or could be taken care of by the judge in his instructions to the jury on the trial of the case. See Kupferman v. McGehee, 63 Ga. 250; Wimpee v. Burt, 148 Ga. 418 (96 S. E. 993). The plaintiff could not recover of the insurance company any more than the liability fixed by its contract and by the statute under which it was issued. Under the stipulations between counsel appearing in the record in this case, it was conceded that an indemnity policy was issued by the insurance company to LaHatte et al. as a motor common-carrier line; and it appears that the amount of such policy was not to exceed $10,000 for injury to any one person, and not to exceed $20,000 for injury to two or more persons. The verdict was for $8000. This being true, the insurance company was in no way harmed on account of the amount of the suit as laid in the petition.

■ It has been adjudicated that the petition set out a cause

of action. If the motor truck of defendants was being operated as alleged by the plaintiff, and if the plaintiff could not have avoided the consequences of the defendants' alleged negligence (and evidently the jury took this view of the matter), then the evidence authorized the verdict for the plaintiff, there being no dispute as to the amount thereof. It is not for this court to disturb a verdict authorized by the evidence and approved by the trial judge. *Sledham* v. *Kinney,* 41 *Ga. App.* 543 (153 S. E. 610). A large motor truck, although operated in the public service as a common carrier and transporting freight and thereby carrying on a useful public business upon the highways of this State, has no right to usurp the use of the highways to the peril of other vehicles traveling thereon. Every motor vehicle properly using the highways of this State has equal rights with others in that use. *Shore* v. *Ferguson,* 142 *Ga.* 657 (83 S. E. 518); *Eubanks* v. *Mullis,* 51 *Ga. App.* 728 (181 S. E. 604).

■ It was not error for the court, in stating the contentions of the plaintiff, to charge the jury that this action "is based by the plaintiff upon the alleged negligence of the defendants; and in the plaintiff's petition he specifies the particulars in which he says the defendants were negligent, in that he says that the defendants were negligent in failing to operate said truck on the right-hand side of the road; in failing upon meeting the car in which the [plaintiff was] riding, which was traveling in the opposite direction, to turn to the right of the center of the highway, which was in violation, they say, of the law; and in failing, in rounding the curve, to keep said truck as far to the right of the highway as was reasonably safe." The defendants contend that this charge amounted, in effect, to giving to the jury the portions of the automobile law of 1927, pp. 226, 237 (Code of 1933, § 68-303, c, e), which provide, in part, that "an operator meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center on the highway, so as to pass without interference," and "An operator in rounding curves shall reduce speed and shall keep his vehicle as far to the right on the highway as reasonably possible," which portion is alleged to be void and unenforceable, because of the use therein of the words, "as far to the right on the highway as reasonably possible," the same being too vague and indefinite to be a measure or standard of care and safety to be ob-

served by automobilists on the highways of this State. This statute and the charge of the court using the words "as was reasonably safe" were not subject to the criticism made. *Strickland* v. *Whalley*, 142 *Ga.* 802 (83 S. E. 856). The defendants contend that such act is unconstitutional for the above reason, but they do not point out the particular provision of the constitution it is alleged to contravene. This is not sufficient to raise the question. *Savannah &c. Ry. Co.* v. *Gill*, 118 *Ga.* 737 (45 S. E. 623) ; *Clements* v. *Powell*, 155 *Ga.* 278 (8) (116 S. E. 624). Furthermore, a constitutional question can not be raised for the first time in a motion for new trial by an attack on a charge of the court, where it could have been brought to the attention of the trial court by appropriate pleading. *W. & A. R. Co.* v. *Michael*, 43 *Ga. App.* 703 (160 S. E. 93).

■ The judge charged the jury: "I do not intimate to you . . whether there is or is not any admission made by any of the parties in this suit as to any matter in controversy; but if you find from the evidence that there were any admissions made as to any matter or controversy, then I charge you that any admissions should be scanned by the jury with great care." This was a proper charge to apply either to admissions made in a former suit by the plaintiff in this case, and which were introduced in evidence, or to admissions made to third persons outside of court. "After admissions in pleadings have been withdrawn by amendment, they may be introduced in evidence against the party making them. In such case it is not error to give to the jury the usual charge upon the subject of admissions." *Elliott* v. *Marshall*, 179 *Ga.* 639 (176 S. E. 770).

■ The defendants contend that the court erred in failing to charge the jury, in effect, that the rules of the Public-Service Commission permitted the operation of a truck not exceeding eight feet in width, the width of defendants' truck, and therefore that the mere operation of such truck on the highways of this State was not to be considered as negligence in itself, and thereby no blame should be placed upon the defendants solely because of the operation of a truck of such width; and further that, assuming that such truck of defendants did conform to the rules of the commission in regard to width, the driver thereof would be under no obligation to drive so far to the right of the road as to make its operation

dangerous; and that even though the truck body did extend over on the plaintiff's side of the road, this would not be a violation of the law. The plaintiff did not allege that the defendants were guilty of negligence per se solely because of the width of the truck, but contended that their driver negligently operated the truck on his side of the road in rounding a curve and in meeting him. The court did not err in refusing the requests to charge the jury as stated in grounds 4, 5, and 6 of the motion for new trial.

■ The court did not err in refusing to charge the jury that "In determining where the center of the highway existed, you would look to the evidence and determine, if the evidence so discloses, the entire width of the highway from the edge of one shoulder to the edge of the other shoulder, in so far as such paved and unpaved portions could be used in the operation of vehicles thereon without danger, and the center of the highway would be the center of both the paved and unpaved portions, and would not necessarily be the center of the paved portion of the highway." What is stated in this requested instruction was substantially covered in the general charge. The judge instructed the jury in the identical language of this requested charge, except that instead of stating that "the center of the highway would be the center of both the paved and unpaved portions, and would not necessarily be the center of the paved portion of the highway," he stated that "the center of the highway would not necessarily be the center of the paved portion."

■ The court was requested to charge the jury: "It is contended on behalf of the defendants . . that the plaintiff was guilty of negligence, and that such negligence was the sole cause of any injury which he may have sustained. In this connection, I charge you that if you should find from the evidence that the accident and injury was the result of the negligence of the plaintiff, . . it would be your duty to find a verdict in favor of the defendants." This principle was sufficiently covered by the general instructions to the jury, and the judge did not err in refusing the request. He substantially instructed the jury that the plaintiff could not recover if his injury was the result of his own negligence. The jury were instructed that no person can recover damages where the injury is caused by his own negligence or with his consent; that if the jury should find that plaintiff's injury and

consequent damages were brought about by his consent or caused by his own negligence, he would not be entitled to recover; and that if the plaintiff by ordinary care could have avoided the defendants' negligence, he would not be entitled to recover. The court fully and clearly instructed the jury on the law of comparative negligence and diminution of damages.

■ The court charged: "Our law further provides . . that if the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendants' negligence, he would not be entitled to recover. And I charge you, in this connection, that the meaning of this provision of the law is, that, irrespective of whatever negligence the defendants may have been guilty of, the plaintiff would not be entitled to recover if by the exercise of ordinary care he could have avoided the consequences to himself of this negligence. As applicable to this case, this provision of the law means that if you should find from the evidence that the defendants' truck was being operated with a portion thereof on the left of the center of the paved portion of the highway, and even if you should find from the evidence that such operation on the part of the defendants was negligence, yet if Mr. Walton by the exercise of ordinary care could have avoided the consequences to himself of that negligence—if it existed, then he would not be entitled to recover. . . However, the duty to exercise ordinary care to avoid the consequences of another's negligence does not arise until the injured party knew, or in the exercise of ordinary care ought to have known, of the negligence, or such negligence is apparent, or by the exercise of ordinary care should have been apparent—if negligence there was." This charge substantially covered the requested instruction embodied in ground 9 of the motion for new trial. The contention of the defendants that the omission from this instruction of the language that if the jury "should find from the evidence that the defendants were guilty of negligence in some one or all of the particulars charged in the petition, and if the said Walton by the exercise of ordinary care could have avoided the consequences to himself of such negligence, if it existed, then said Walton could not recover in this case, and that the verdict should be for the defendants," rendered said charge as given an insufficient compliance with the request, and an incorrect statement of the law as applied to this case, is not well founded. The court

specifically and plainly instructed the jury, that, "irrespective of whatever negligence the defendants may have been guilty of, the plaintiff would not be entitled to recover if by the exercise of ordinary care he could have avoided the consequences to himself of this negligence."

■ The defendants requested the court to charge the jury that "the word 'avoid' as used in the statute of the State of Georgia, which has been given you in charge, is of very broad and comprehensive meaning; and if you should find from the evidence that the said Walton did discover, or in the exercise of ordinary care could have discovered, that the truck of the defendants was being operated with a portion of the same to the left of the center line of the paved portion of the road, and after making such discovery or after he should have made such discovery, if you find that he should have, said Walton could have avoided the collision with the said truck, either by bringing his car to a standstill or by moving his car to the right side of the road, or otherwise avoiding the collision with the said truck, then Walton would not be entitled to recover, and your verdict should be for the defendants." The judge instructed the jury "that the word 'avoid' as used in the statute of Georgia has a broad and comprehensive meaning; and if you should find from the evidence that Mr. Walton did discover, or in the exercise of ordinary care should have discovered, that the truck of the defendant company was being operated with a portion of the same on the left of the center line of the paved portion of the road, and after making such discovery, or after he should, in the exercise of ordinary care, have made the discovery—if you find that he should have,—and that he could have avoided a collision with the truck by the exercise of ordinary care, that he would not be entitled to recover." The defendants contend that the judge by omitting the language, "either by bringing his car to a standstill or moving his car to the right of the road or otherwise avoiding the collision with the said truck, then Walton would not be entitled to recover," left out the most essential portion of the requested instruction, that is, the part which indicated the manner in which the plaintiff might have avoided the collision by the exercise of ordinary care on his part. To have instructed the jury in this language would have been virtually to charge them that the plaintiff's failure so to do would have been a failure on his part

to exercise ordinary care, and therefore negligence precluding a recovery by him. This would have been error as to the plaintiff, and would have been invading the province of the jury, whose duty it is to ascertain what acts do or do not constitute negligence under appropriate instructions from the judge. *Crown Cotton Mills* v. *McNally,* 123 *Ga.* 35 (51 S. E. 13); *Singleton* v. *Slate,* 124 *Ga.* 136 (52 S. E. 156); *Hutchinson* v. *Greene County,* 11 *Ga. App.* 103 (74 S. E. 853). The defendants contend also that the charge as given limited the negligence of the defendants, the consequences of which the plaintiff by the exercise of ordinary care could have avoided, to one act. It is not a good exception to a failure or refusal to charge as requested that the charge actually given by the court was erroneous in any particular.

■ It was not error to refuse the request for instruction stated in ground 11. To have charged that there was a duty on the plaintiff to bring his automobile to a stop so as to avoid a collision, and that his failure so to do would preclude a recovery by him, would have been error, as this would have amounted to an instruction telling the jury what act constituted negligence. It is only where an act is negligence per se that a court should instruct the jury what constitutes negligence.

■ The requested instructions stated in ground 12 in so far as essential, applicable, and proper, were covered by the general charge to the jury. As stated, this court has carefully considered the entire charge and as a whole it is full, comprehensive, and fair, and covers all of the contentions of the parties under the pleadings and the evidence.

The requested instruction stated in ground 13 was not a correct statement of the law, and in effect amounted to a request for the court to charge that it was not necessary that the driver of the defendants' truck perform certain acts in operating such truck in the exercise of ordinary care on his part, which, as we have seen, would have been improper for the trial judge to do.

■ The court charged that "the plaintiff alleges that the defendants have injured and damaged him in the sum of money set forth in his petition. He alleges, in substance, that on or about the 25th day of June, 1931, the defendants operated a truck or trucks between Atlanta and Chattanooga, for the purpose of transporting freight for hire; that the individuals, in accordance with

the laws of this State for the protection of the public against injuries proximately caused by the negligence of those in charge of and driving trucks, offered to and had approved by the Public-Service Commission of Georgia a policy of indemnity insurance in lieu of the bond required by the act, which policy was with the Bankers Indemnity Insurance Company, who is authorized to do business in this State, . . that the above-named individuals and the Bankers Indemnity Insurance Company, with an agent and office doing business in the State of Georgia, upon whom service can be had, are named as defendants; that LaHatte et al., as partners and individually, have injured and damaged him in the sum of $25,000, by reason of the facts herein set forth, and the defendant indemnity company, pursuant to the issuance of said insurance policy aforesaid, indemnified them against any loss." This charge is assigned as error on several grounds. To begin with, it is but a statement of the case or contentions of the plaintiff as set out in his petition as amended, and is for that reason proper. *Napier* v. *DuBose,* 45 *Ga. App.* 661 (165 S. E. 773). As we have seen, the charge was not erroneous because it permitted a joinder of the insurance company with the other defendants. The defendants further attack this charge in their motion for new trial, because the particular provisions (section 5) of the motor commoncarrier act of 1929, on which the plaintiff's case is laid, are unconstitutional upon certain grounds; that is, that this act is a special law covering a matter for which there is an existing general law, to wit, section 5521 of the Code of 1910 (Code of 1933, § 3-113), and because the act contains matter different from that expressed in its title. These constitutional attacks are thus raised for the first time in the motion for new trial. As the suit is predicated thereon, they could have been raised by appropriate demurrer in the trial court. Under the decision in *W. & A. R. Co.* v. *Michael,* supra, and the authorities therein cited, such constitutional questions can not be raised for the first time in a motion for new trial, by attacking a charge of the court to the jury. This disposes of grounds 15 and 16 of the motion for new trial.

■ The verdict being supported by and authorized under the evidence (see division 2 of this opinion), and no error of law appearing in any of the special assignments of error, the judge correctly overruled the motion for new trial.

*Judgment affirmed. Stephens, J., concurs. Jenkins, P. J., disqualified.*