Taylor *et al. v.* McCool *et al.*

(*Knoxville*, September Term, 1945.)

Opinion filed October 13, 1945.

(1)

CHAMBLISS & CHAMBLISS and FRAZIER & ROBERTS, all of Chattanooga, for plaintiffs in error.

SAM J. MCALLESTER and JOHN ROSS SCOTT, both of Chattanooga, for defendant in error.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This appeal presents an action in damages by Harry F. McCool as plaintiff against William Lea Taylor and David Neil as defendants, which was commenced in the Circuit Court of Hamilton County. An exchange of "show horses" by McCool and Taylor was the origin of the difficulty. Neither of the defendants is a resident of Hamilton County, Tennessee. Neil, upon whom personal service was secured in McCool's office in Chattanooga, Tennessee, is a resident of Walker County, Georgia; and Taylor, upon whom service was secured by counterpart summons, is a resident of Shelby County, Tennessee. Neil's presence in Chattanooga was known to McCool and his attorney and was the result of an agreement made by Neil with them. Neil has insisted throughout that he came to Chattanooga by agreement, in an effort to

bring about an amicable settlement of difficulties arising from the exchange of horses between Taylor and McCool, in which he had been an intermediary. He, as a dealer and trainer of horses, had sold McCool a horse, "Silver Scandal", and accompanied McCool to Shelby County to arrange for the exchange of this horse for one named "Cross of Gold". The exact part that Neil had in the details of the exchange is a matter of dispute, but when the trade was finally consummated he received a commission of some $200 from Taylor. The final trade was the delivery by McCool of "Silver Scandal" and $2,035 for the horse, "Cross of Gold". McCool insists that an essential part of the representation which led to his exchange of horses was that "Cross of Gold" was a registered animal and that papers evidencing such registration were to be delivered to him at the time of the exchange. He shows no reason why he did not in prudence demand to see the papers before the trade was made. He was an experienced horse trader and not in a position of disadvantage, nor are there any circumstances which justified his relying on the alleged statements made to him without demanding confirmation before he acted on them.

No such registration papers were forthcoming and many demands for them were made by McCool on Taylor, his trainer, Bradshaw, and Neil. When McCool was finally informed that "Cross of Gold" was not registered and was not so bred as to be capable of registration, plan for this suit was made by McCool after consultation with his attorney.

The first step in the plan was to place the venue in Hamilton County, since that was the county of McCool's residence. His attorney went to Neil's farm in Georgia and arranged with Neil to come to Chattanooga. Whether Neil came to Chattanooga for the purpose of accepting

service of process as the agent of Taylor is in dispute, but it is certain that Neil did not expect to be sued himself in an action in damages. However, he came to McCool's office, and on his arrival McCool telephoned his attorney, who prepared a summons and brought a deputy with him to effect the service in Hamilton County.

After the return of this process a counterpart summons was issued to Shelby County and service so secured on Taylor. The declaration was filed and Neil and Taylor filed separate pleas in abatement in which attack was made on the means whereby the service had been secured on each of them. Neil alleged that he had come to McCool's office for a friendly conversation for the purpose of making an amicable settlement of the dispute, and denied that any notice had been given him of any intention of filing a suit. By his plea, Taylor insisted that venue in Hamilton County was obtained by a feigned action against Neil and also by fraudulent connivance with him; that Neil was not a material defendant but was only joined so that counterpart process for Taylor might issue to Shelby County and the venue placed in Hamilton County.

Trial of the issues raised by the pleas in abatement to a jury resulted in a verdict for the plaintiff, and on the trial on the general issue, which immediately followed, the jury returned a verdict for $2,641 against both defendants. This verdict was subsequently reduced by the trial judge to $2,141, and the motions for new trial were then overruled.

Separate appeals were perfected and prosecuted by each defendant to the Court of Appeals. On the ground that the evidence was insufficient to support the judgment against him, that court dismissed as to Neil, but affirmed the judgment as to Taylor.

From the action of the Court of Appeals in dismissing Neil, McCool filed a petition for *certiorari* to this Court, and from the action in affirming the judgment against him, Taylor also filed petition for *certiorari*. We granted both petitions for *certiorari* and the case has been fully argued and briefed by all parties.

The single matter of error presented by the petition for *certiorari* for McCool is that the action of the Court of Appeals in dismissing the judgment as to Neil is against the weight of the evidence and in direct conflict with the proven facts.

Neil and McCool had known one another for some years prior to this controversy. Neil had sold McCool the horse "Silver Scandal", continued to board the horse at his farm after the sale, and given McCool's daughter riding lessons. She became interested in horse shows and wished to procure a registered animal to ride in such exhibitions. Neil advised McCool that a suitable animal was to be had from Taylor at Wildwood Farms in Shelby County, Tennessee. Neil and McCool paid a visit to Wildwood Farms to make a trade. On their arrival there the negotiations were carried on by McCool and Taylor, or Taylor's trainer, Bradshaw, and without the intermediation or knowledge of the defendant Neil.

The essential issue in the litigation is whether or not it was represented to McCool that "Cross of Gold" was subject to registration, or had in fact been registered. It is further somewhat doubtful from the record, exactly what the use of the word "registered" implied, since the avowed and acknowledged purpose of such registration was merely that the horse should be entered in horse shows, and not used for breeding. In any event, after the negotiations in Shelby County, and further negotiations by long distance telephone, in which apparently

Neil had no part, an exchange was agreed to be made of "Silver Scandal", valued at $1,000, and "Cross of Gold", valued at $3,035. The exchange of horses followed and the balance of cash was paid to Taylor by McCool, but no registration papers accompanied "Cross of Gold" when the horse was delivered.

Some six months after this McCool began to demand these papers from Taylor, from his trainer, Bradshaw, and later, from Neil. McCool insisted that at the time of his visit to Wildwood Farms, either Taylor or his trainer had represented that they had the "papers" on "Cross of Gold", that later McCool had seen Bradshaw at Milan, Tennessee, and been promised the registration papers upon the latter's return to Memphis. So the matter went on, with McCool demanding the papers and Taylor, Bradshaw and Neil putting him off on various pretexts. Finally, in September 1941, Neil was told, and immediately passed the information on to McCool, that "Cross of Gold" was not registered and not subject to registration. It is clear that the original representation upon which the trade was closed, was made by either Taylor or his trainer, Bradshaw, direct to McCool, and that he acted on misinformation received direct from them. It seems also clear that Neil, in such misrepresentation as he made to McCool, was acting on misinformation that he received from Taylor or Bradshaw. In other words, he was at most negligent, and not wilfully untruthful. We also agree with the Court of Appeals in that part of its opinion in which it is said: "His (Neil's) function was purely that of an intermediary who succeeded in bringing the parties together. Thereafter, they appear to have carried on direct negotiations. No doubt Neil's assertion that the horse they were about to go to Memphis to see was a registered horse induced plaintiff

to make the trip to Memphis but when he arrived at Wildwood Farms plaintiff took negotiations into his own hands and, as against Neil who made no intentional misrepresentation, we think plaintiff's failure to discover the true facts and his apparent reliance upon representations made by Taylor and Bradshaw preclude recovery against Neil. It is true that, according to one view of the evidence, Neil suppressed his knowledge of the falsity of the representation after he learned that the horse was not registered but this was after plaintiff had sustained the injury for which he sues. When plaintiff reached Wildwood Farms he was at the source of any information he might have assumed Neil to possess with respect to the registration of the horse but made no inquiry and chose to rely, we think upon the representations made by Taylor and Bradshaw.''

Indeed, this statement is borne out by statements which McCool's attorney made in open court at the outset of the trial when he said on two occasions that ''Neil was as much outraged by Taylor's conduct as was McCool.''

It results that the assignments of error made in the petition for *certiorari* filed by McCool are overruled.

With this action dismissed against the defendant David Neil, it is in the same plight as was the early case of *Yancey* v. *Marriott, Frisby & Co.*, 33 Tenn. 28, construing the Act of 1820 (now unchanged as Code section 8653, providing for counterpart summons), when it was presented to this court on appeal. The action was in debt against two partners, one of whom lived in Greene and the other in Washington County. Venue was laid in Greene County by service on the partner Stuart, who lived there, and counterpart was issued to Washington County and served on the copartner Yancey, a resident of the latter county. Yancey filed plea in bar. Two days

·before the trial a *nolle prosequi* was entered as to Stuart, the partner who had been served on the original summons, and when motion to dismiss, filed by the remaining partner, Yancey, was overruled, the case was appealed: Holding that after the dismissal of the party served on the original summons, the action was abatable on plea of the remaining partner, Judge CARUTHERS said:

"It will not do to hold that under this Act, the mere fact that the original summons is served upon some resident of the county, where the suit is brought, who is made defendant and discharged before the trial, will give jurisdiction to the court, against a resident of another county, who is brought in by a counterpart. If this were so, there would be no difficulty in any case in drawing a man out of the jurisdiction, where he has a right to be tried, no matter to what inconvenience and hardship it might subject him and his witnesses. It was the intention of the legislature to save the expense and trouble of a multiplicity of suits on the same cause of action, by bringing all the parties into the county, where one of the material defendants might reside. . . .

"In this case the suit was against Stuart & Yancey as partners, and there was no ground of objection until the *nolle prosequi* as to Stuart, only two days before the trial. It was not until that was done, that a ground for abating the suit existed, and he would then have been entitled to the benefit of it by plea, but not by motion."
*Yancey* v. *Marriott, Frisby & Co.*, 33 Tenn. 28, 40, 41.

▪ *Yancey* v. *Marriott, Frisby & Co., supra,* was last approved by this Court in *Citizens' Bank & Trust Co.* v. *Bayles,* 153 Tenn. 40, 49, 281 S. W. 932, and by the Court of Appeals in *Western Auto. Cas. Co.* v. *Burnell,* 17 Tenn. App. 687, 693, 71 S. W. (2d) 474.

"It was never contemplated by the framers of the act of 1820 (Code [1858], sec. 2821) [1932, sec. 8653] to allow the process of the court to be abused by fraudulently procuring a friend's assistance to bring the real parties out of the jurisdiction of the courts where they have a right to be tried, and to subject them to increased trouble and expense in defending suits, where jurisdiction is made to depend upon the plaintiff's success in passing his friend, against whom he has no cause of action, as a material defendant to his suit." *Achy* v. *Holland*, 76 Tenn. 510, 511, 512.

In their opinion the Court of Appeals also said: "*The ultimate test is the good faith of the plaintiff in joining in his suit a resident defendant having a real and antagonistic interest in the subject matter of the suit.*" (Italics ours.)

■ Applying this test, with which we agree, it cannot be said that Neil was a resident defendant. If then he was not resident he was not a material defendant, if this test is exclusive. The difficulty finally lies in this, that clearly when Neil was induced to come to Hamilton County to accept service, plaintiff or his representatives knew that Neil had a "real and antagonistic interest" in the proposed suit but this was not disclosed to Neil and he so stated, as both the witnesses Scott, plaintiff's then attorney, and plaintiff McCool admit when they both testify that Neil protested when the officer disclosed for the first time to him that the summons ran against him personally and that he personally was being made a defendant and so charged with possible personal liability in the suit.

After testifying that Neil came into Hamilton County by previous agreement, Scott answered the question:

"Q. Now, what was Neil's reaction to that, after he found he was sued? A. I think he said 'You ought not to sue me.' But, I again explained to him that this was the only way we could handle the matter."

McCool, agreeing that Neil protested about being made a defendant, testified:

"Q. Mr. McCool, after the deputy sheriff came down and served the papers on Mr. Neil, what was his reaction? A. Well, he said he accepted service, but did not think we ought to include him. That is all he said. Then we sat down and he and Mr. Scott and I discussed it for a while, why it was I had no other course."

In his sworn plea in abatement, Neil said that after having been persuaded to come to Chattanooga to Mc-Cool's office to discuss an amicable settlement, having been asked to leave and come back in about an hour, upon his return he "was very much shocked and surprised to find a deputy sheriff, and Mr. McCool's attorney John Ross Scott walk into the door and into the office and serve the papers in this suit on this defendant.

"This defendant thereupon expressed his feelings to Mr. McCool and his attorney in regard to their misrepresentations and false and fraudulent conduct in getting him over into Tennessee for the purpose of suing him, and they both said that this was the only way they could get a suit started against his co-defendant Taylor, and have it tried in Chattanooga and it was for this purpose they had induced, by these false and fraudulent pretenses, this defendant Neil, to come into the State of Tennessee."

Further detail of the application in the present case, of the test of "the good faith of the plaintiff in joining Neil as a defendant," stated to be essential by the Court

of Appeals in the foregoing quotation from its opinion, is unnecessary.

██ ██ "We see no reason why a different rule should be applied in case a plaintiff, by agreement with one of two joint tort-feasors, intentionally accomplished the destruction of the statutory right of the other to be sued in a fixed venue, from that applied when the same purpose and result is accomplished by deceit practiced on the said joint tort-feasor. In either case, the result accomplished is the same, and constitutes a fraud *on the jurisdiction of the court*, and the court should refuse to exercise jurisdiction so obtained. The right of a defendant to be sued in the venue fixed by statute is too valuable to permit it to be destroyed at the whim or will, or for the convenience, of a plaintiff, and a friendly defendant who may be joined. A lawful act does not become unlawful merely because it may be done by agreement between two parties; *but if the purpose and result of the act is to defeat and destroy a right guaranteed by law to another, the act becomes fraudulent in its nature.*" (Emphasis ours.) *Nicholson* v. *Gulf, Mobile & Northern R. Co.*, 177 Miss. 844, 854, 172 So. 306, 308, 309.

This Mississippi case is very similar on the facts to the case before us, and is strongly relied on by Taylor's counsel in his brief and argument. The suit arose from a collision between an automobile in which Nicholson was riding and a freight train of the railroad. One, Paul Coleman, a resident of Tennessee, was the driver of the truck in which Nicholson was riding when he received his injury. Either by guile or collusion, Nicholson induced Coleman to come to Tishomingo County, Mississippi, where the latter resided, and then filed suit, secured personal service on Coleman, thus fixed the venue and later served the railroad, which had no lines in Tisho-

mingo County. Holding that it was unnecessary to determine whether there had been fraud or collusion, as appears from the foregoing quotation from its opinion, the highest Court in Mississippi affirmed the trial judge in dismissing the suit.

"It is well established as a general rule that in a civil case a court will not take jurisdiction based on a service of process on a defendant who was brought within reach of its process wrongfully or fraudulently, or by deceit or any other improper device, provided, of course, the wrong or deceit is chargeable to plaintiff. This rule is based not on a lack of jurisdiction but on the view that it is improper for a court to exercise a jurisdiction so obtained." 21 C. J. S., Courts, sec. 83, p. 124; 15 C. J. 800; *Gregory* v. *Howell*, 118 Iowa 26, 91 N. W. 778; *Steiger* v. *Bonn*, C. C., 4 F. 17, 3 N. J. L. J. 370; *Nicholson* v. *Gulf, Mobile & Northern R. Co.*, 177 Miss. 844, 172 So. 306; *Commercial Mut. Acc. Co.* v. *Davis*, 213 U. S. 245, 29 S. Ct. 445, 53 L. Ed. 782; *Fitzgerald, etc., Construction Co.* v. *Fitzgerald*, 137 U. S. 98, 11 S. Ct. 36, 34 L. Ed. 608; *Blair* v. *Turtle*, C. C., 5 F. 394, 1 McCrary, 372; *Battelle* v. *Youngstown Rolling Mill Co.*, 84 Tenn. 355.

Counsel for McCool relies on the case of *Knoxville Banking & Trust Company* v. *Mershon*, 152 Ky. 169, 153 S. W. 238. In that case a resident of Indiana went into Kentucky and there submitted to service of process. The action was on a promissory note upon which the non-resident, with many others, was liable. He was so a definitely interested party and a material defendant. He took the action he did for the purpose of himself avoiding the future necessity of bringing a number of suits for contribution against those others liable on the note with him, and who were residents of Kentucky. This clearly distinguishes the Kentucky case on the facts from

the facts of the case before us here. But by our disposition of the case, we follow the law of Kentucky, since by the Code of that state, Civ. Code Prac. sec. 80: "No judgment shall be rendered against defendants served with process out of the county in which the action is brought, if the action is discontinued or dismissed as to the defendant who is summoned in the county, or if judgment be rendered in his favor." *Knoxville Banking & Trust Co.* v. *Mershon*, 152 Ky. 169, 171, 153 S. W. 238, 239.

Since the action has been dismissed as to Neil, in Kentucky, under the foregoing authority, the action would be dismissed as to Taylor.

The facts of this case are so unusual that counsel have been forced to admit that very few cases from our own or other jurisdictions have been found in point. The lack of precedent is evidence of the impropriety of the procedure. However, in applying the rule of *Yancey* v. *Marriott, Frisby & Co., supra*, to the rather extraordinary facts of this case, we do not intend to hold that in every case where service is had on one defendant by counterpart summons that unless a final judgment is secured against the codefendant brought in under original process, that the defendant served by counterpart summons may abate the action and avoid judgment.

The judgment of the Court of Appeals in dismissing the defendant Neil is affirmed, and in so far as it affirmed the liability of the defendant Taylor, it is reversed.

NEIL, J., not participating.