7L 463
11L 62

JOHN S. ROSS *v.* GEORGE G. SWAN *et al.*

1. ABANDONMENT. *Proof.* To make out a case of abandonment or waiver of a legal right, there must be a clear, unequivocal and decisive act of the party, showing such a purpose, or acts amounting to an estoppel on his part.

2. SAME. *Same.* A purchaser who buys land sold under a decree of the chancery court, with lien retained on face of decree, buys subject to the lien thus retained. The facts that the clerk had reported, that the ten per cent. required to be paid in cash by the decree had not been required of one purchaser, and that judgments had been taken against other purchasers on their notes given at the same time and none against this one, do not show that the express lien retained by the decree had been waived.

3. ASSIGNMENT. An assignee who has purchased the interest of an heir in a partition suit, his assignment being complete, and he made party to the partition proceedings in order to the prosecution of his right under the interest thus assigned, cannot be affected by a bill, filed subsequent to such assignment, seeking to raise an equity in the interest assigned and enforce it against the assignor. The prior assignment has preference to such a bill.

FROM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

CORNICK & CORNICK for complainant.

T. S. WEBB and LEWIS TILLMAN, Jr., for def'ts.

FREEMAN, J., delivered the opinion of the court.

Wm. Swan, as we gather from the statement of the bill in this case, died a number of years since,

without children, leaving a considerable estate. Jos. A. Mabry became assignee of the interest of certain of his heirs in his estate, and as such was party to proceedings had in the chancery court at Knoxville to sell the lands for partition and distribution of the proceeds among the parties entitled.

In 1866, a decree was made ordering a sale of the lands, directing that ten per cent. in cash be paid by purchasers, balance in two instalments, due at six and twelve months, notes and security to be given, and a lien to be retained on the land for the payment of the amount.

At this sale Jos. A. Mabry became the purchaser, among other lands, of a lot in East Knoxville at six hundred dollars. The sale was reported to the court by the clerk, with the statement that, as Mabry was a beneficiary in the case, he was not required to make any payment in cash, but executed his two notes for five hundred and fifty dollars each, with George W. Mabry as his surety. These notes, we take it, however, were for another tract of land purchased at said sale, known as the "Billy Clark" tract, as the price is stated to have been eleven hundred dollars. The report of the sale was confirmed as thus made. Afterwards, in 1867, an order was made requiring the clerk to report the amount of purchase money due and unpaid for town lots and other real estate sold. The clerk reported various parties as owing the amounts stated by him, and at close of his report adds: "Also, from Joseph A. Mabry on his two notes, not paid on the ground of his being a beneficiary in the case,

$1,100. The court confirmed this report, and rendered judgments against all the parties named for the amounts due, except Joseph A. Mabry. Five purchasers are charged thus to have had judgments against them, but no decree was then rendered against Mabry. The land of the parties against whom judgments were thus rendered was ordered sold for the purpose of collecting their respective indebtedness. This was done on the 29th of July, 1867. After this, on August 17, 1867, Mabry sold the East Knoxville lot to Wilcox, giving a bond for title on payment of the purchase money, and on May 23, 1868, Wilcox sold to complainant, and then after this Mabry made a deed to Wilcox, and then Wilcox made one to complainant, the latter having covenants of seizin and of right to convey, and general warranty of the title. It is then charged that on the 20th of January, 1868, the clerk and master paid to Mabry $500 on account of his interest in the estate of Swan, and on the 3d of December, 1868, paid $1,224.68, and on closing the partition proceedings a considerable sum was still due to his share, and perhaps $200 then on hand in the office of the clerk and master, which should be appropriated to pay for this lot. In the commencement of the bill, however, it is stated that on the 30th of September, 1873, Mabry had conveyed to John Baxter, for a consideration stated in the conveyance, his interest in the estate of William Swan, and on the 4th of April, 1874, Baxter had filed in the partition cause his application to become a party, alleging said assignment, and was so made a party by order of the

30—VOL. 7.

court on this ground.    The present bill is filed April 17, 1876.    It further appears from the bill that, in 1875, the chancery court ordered the lot sold for the payment of the purchase money which remained unpaid, and the same had been advertised for said purpose.    The only additional equity is, that Mabry and Wilcox had then, or four years perhaps before filing this bill, become insolvent.

On the equities assumed from the above facts, an injunction is asked against this decree ordering the lot sold, and that said decree be annulled and set aside so far as it orders the sale of the house and lot, and then for general relief.

A demurrer was filed to this bill, which was sustained, from which there is an appeal to this court.

The claim of equity in the bill, as earnestly urged by the counsel of complainant, is based on the following propositions: That the parties to the partition proceeding had, by laches, allowed complainant's title to ripen into an indefeasible one, or that, by raising no objection to the reports of the master which we have referred to, had waived or abandoned their lien retained in the decree ordering the sale; and further, the report saying Mabry was not required to pay in cash, but executed his notes, etc., vitiated the decree ordering the sale, "and announced to all the world that third persons might deal with Mabry and his assignees as the owner of the lot free from the lien, and the parties would look to Mabry's interest in the fund for payment of the $600 due on this lot."

We are unable to see anything in the first ground

stated, that the parties to the partition bill had by laches allowed complainant's title to ripen into an indefeasible one. The lien for the purchase money was retained in the decree ordering the sale under which Mabry purchased. This decree was the third link in the chain of title of the present complainant, he having purchased from Wilcox, Wilcox from Mabry and Mabry under the decree, and of this chain of title the vendee was bound to take notice. He purchased subject to the *lis pendens,* and is bound by the result: *D. C. Spence et al. ex-parte,* 6 Lea; *Finlay* v. *McCall,* MS., Knoxville, 1874. Having purchased with notice of the unpaid purchase money, we can see no duty imposed on the parties to the partition suit to hasten the collection of their debt for his benefit. Wilcox purchased in 1867 and this complainant in 1868, less than two years after Mabry had purchased. The lien retained on the face of the decree was notice to all of its existence. The parties to the partition were certainly under no obligation, legal or moral, to protect the interest or title of a party intervening as purchaser, and thus encumbering land on which they had a lien for payment of its price by the purchaser at the judicial sale. It was complainant's plain duty to look to his own interest and rights in the premises. The parties having the lien were only bound not to mislead or injure other parties, but were under no obligation whatever to any diligence in guarding their rights from infraction or protecting them from loss. To make out a case of abandonment or waiver of a legal right, there must be a clear, unequivocal

and decisive act of the party, showing such a purpose, or acts amounting to an estoppel on his part: See Meigs' Dig. (Milliken), title *Abandonment,* with case cited. We cannot see that the facts shown in the reports either indicate any purpose to abandon the lien retained in the decree, or in any way work an estoppel on the parties to the partition suit. By confirmation of the reports as made, they had waived the right to have payment of ten per cent. in cash, and seem to have also waived the necessity for security on the $600 note, but this is all that can fairly be inferred from the facts stated. The real meaning of what was done, as the record stands, is, not that anybody may deal with Mabry as holder of this property free from incumbrance, but that it is considered that the lien retained on the lot and his personal security on the note, together with the fact that he is a beneficiary, will make the payment of the purchase money secure without the payment of ten per cent. or additional security. In fact, the fair inference from the facts is, that the lien was relied on, and other security, as in the case of the other tract, was not deemed necessary. A party certainly has the right to waive taking personal security, and rely on an express lien retained on the face of a decree, if he chooses, without thereby losing that which he retains. And this is all that was done in this case.

The fact that when judgments were taken against five other purchasers none was taken against Mabry, can have no effect on the equities sought to be made out. It only showed that no judgment had yet been

rendered or was then desired, but certainly did not estop the party from doing so if it became necessary for the collection of the debt.   We know of no rule of law that requires all purchasers to be proceeded against at the same term, nor that gives countenance to the idea, that if this is not done, the one not proceeded against does not remain liable precisely as before and to the full extent he was originally bound. It certainly cannot be inferred that such conduct was intended to release a lien expressly reserved on the face of a decree.

The principle, now axiomatic, stated in *Whitby* v. *Armour*, 4 Lea, 686, "that when one of two innocent persons must suffer, the loss must be borne by him whose conduct brought about the injury," has no application to this case, for the simple reason that nothing done by the parties had any influence in working the wrong.   The lien retained on the face of the decree was notice to the party of its existence.   The parties were not bound to actively interfere to prevent any one purchasing from Mabry.   The complainant shows Mabry as well as Wilcox were solvent when they gave their covenants in their respective deeds.   He accepted these covenants as the only measure of protection then required.   The fact that they have since become insolvent, is the cause of his loss. This is his misfortune, but in no sense the wrong of the parties defendant in this case.   He must bear the loss occasioned by this unlooked-for mistake or want of foresight on his part, but cannot charge respondents with its consequences.

Ross *v.* Swan.

We would find but little difficulty, perhaps, under the prayer for general relief, in giving complainant reimbursement out of any funds on hand in the chancery court belonging to Mabry, on the principle that where the covenantor is insolvent and the covenants have been broken, a court of equity will offset the damages occasioned by the breach of the covenants of a deed, against unpaid purchase money. It would be an extension of the rule somewhat in this case to apply a fund in court belonging to the covenantor to this purpose, and not strictly a set-off, but probably a sound equity to do so. But this would be in the nature of damages as on an action of covenant, and could only be done as to funds owned by the covenantor at the time of bringing the suit. It is very doubtful whether this bill is framed so as to make out such a case. Be this as it may, complainant has precluded himself from this relief by showing that all Mabry's interest in the estate of Swan had been transferred and assigned to John Baxter in 1873. While an assignee stands in the shoes of his assignor, it is as to his condition at the time of the assignment, and not subsequent liabilities. The assignor could not have fixed an equity on this fund as against a perfected assignment, as against his assignee. The creditor of the assignor cannot do it any more than he could.

For these and other reasons that might be given, we affirm the decree of the chancellor with costs.