SHORT WAY LINES v. THOMAS.
SHORT WAY LINES v. CHISAM.—
241 S. W. (2d) 875.

Eastern Section. March 13, 1951.

Petition for Certiorari denied by Supreme Court, July 27, 1951.

642

Stuart F. Dye, of Knoxville and J. Ross Cheshire, Jr., of Nashville, for plaintiff in error Short Way Lines.

O. W. McKenzie, of Dayton and Goodpasture, Carpenter & Dale, of Nashville, for Chisam, Admr.

O. T. Ault and R. S. Clemmer, both of Pikeville, for defendant in error, Ethel Thomas, Admrx.

McAMIS, J.    These suits, tried together before the court and a jury and here on a single transcript, grow out of a collision between an automobile operated by Mrs. Allie Breeding and a bus of Short Way Lines, a common carrier of passengers.  Mrs. Breeding was accompanied by her sister, Mrs. Emma Jane Wheeler.  Both were instantly killed after the Breeding car had skidded and had made one and one-half revolutions on the pavement before colliding with the bus.  The Bus Company appeals in error from adverse judgments based upon jury findings as to its liability and Ethel Thomas, Admrx. of the estate of Mrs. Wheeler, appeals from the action of the court in suggesting a remittitur of $5,000 from the verdict of $10,000 in that case.  The cases turn largely, if not entirely, on the application of the doctrine of last clear chance or discovered peril.

On August 9, 1949, Mrs. Breeding and Mrs. Wheeler were traveling on Highway 42 going from Cookeville to Livingston in Overton County, Tennessee.  The pave-

ment, thirty feet in width, was of oil or asphalt finish. It had been raining and the pavement was slick and dangerous. Immediately before the collision they traveled northwardly and slightly down grade approaching a curve to their left. When the bus, approaching from the north, entered the curve the Breeding car could be seen for a distance of from 250 to 300 feet.

According to the witness, Crawley, who was following the Breeding car, Mrs. Breeding was driving between 30 and 35 miles per hour when she topped the hill and started down grade. She was driving on her right hand side. Crawley testified that he was about 150 feet to the rear of the Breeding car when he saw it begin to skid or slip on the pavement. He testified that the bus was then from 160 to 170 feet away. He saw the car revolve on the pavement but apparently sensing that a collision was imminent gave his attention to bringing his own car to a stop on the side of the road and did not see the actual impact.

As it approached the curve from the south, the pavement slanted to Mrs. Breeding's left side of the highway and as her car revolved on the pavement it moved, at the same time, to her left, the right side for the approaching bus. The bus driver testified that he entered the curve at a speed of approximately 35 miles per hour and began to slow down when he saw the approaching car from the south, then a distance of approximately 250 feet away. His testimony is to the effect that the car then was under complete control of the driver though traveling at an excessively high rate of speed which he estimated at 50 miles or more per hour; that the Breeding car proceeded on its right until it reached a point about 75 feet in front of the bus when it suddenly began to spin and turn on the pavement and veer to his side of the highway;

that he further reduced the speed of his bus and pulled to the right to the extent that when the collision occurred his bus was astride a ditch on the west side of the pavement with the right wheels on the west side of the ditch and on an old roadbed running parallel at that point with the highway. He said the bus was nearing a complete stop at the time of impact and traveled only a distance of a few feet after the collision occurred.

The undisputed proof shows that when the two vehicles came to rest the bus was in the position described by its driver. The weight of the evidence shows that the Breeding car was on the pavement near the left front of the bus but 5 or 6 feet to the south. Mrs. Breeding's body was picked up near the left side of the bus several feet north of her car and, according to credible evidence favorable to Thomas, Admrx., and Chisam, Admr., hereinafter referred to as plaintiffs, Mrs. Wheeler's body was lying in the ditch behind the bus a distance of 27 feet, that point being approximately 7 or 8 feet south of a point on the pavement where particles of hair and flesh were found. A license tag from the bus was found between Mrs. Wheeler's body and the rear of the bus. From these physical facts, it is argued that the bus traveled after the collision its full length of 33 feet plus the 27 feet between its rear and the body of Mrs. Wheeler, plus 7 or 8 feet between that point and the point further north where particles of flesh and hair were found on the pavement.

The bus driver further testified that he crossed the ditch before the collision occurred and he is corroborated by other witnesses who were riding on the bus. There is evidence for plaintiffs, however, that weeds were mashed down by a tire track leading across the ditch at a point between where Mrs. Wheeler's body was found and the rear of the bus after it came to rest. Opposed to these

findings, was the further testimony of the bus driver that he traveled about the length of the bus or 25 to 30 feet after pulling into the ditch before the collision occurred and then continued a distance of 15 feet before bringing the bus to a complete stop. He says, having the safety of his passengers in mind, he is not sure that he applied his brakes sufficiently to cause the wheels of the bus to skid on the pavement. No skid marks were found after the collision. He admits that he saw the Breeding car when it first began to skid on the pavement.

■■ The foregoing is considered a sufficient outline of the proof offered by the respective parties to determine the existence of conflicts and the diversity of inferences reasonably to be drawn from the proof, as well as the materiality of such conflicts in resolving the question of the propriety of allowing the cases to go to the jury. It is well to preface our consideration of that question with what was so well said by Judge Felts in D. M. Rose & Co. v. Snyder, Tenn. App., quoted with approval in the same case at 185 Tenn. 499, 508, 206 S. W. (2d) 897, 901:

"While these issues involve a review of the evidence, such review is not to determine where the truth lies or to find the facts, that not being our province in jury cases. It is only to determine whether there was any substantial evidence to support the verdict; and it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. Johnston v. Cincinnati N. O. & T. P. R. Co., 146 Tenn. 135, 149, 240 S. W. 429;

Finchem v. Oman, 18 Tenn. App. 40, 49, 50, 72 S. W. (2d) 564, 570.''

Viewed in that aspect, the jury could have found that when the bus driver saw the Breeding car it was at least 250 feet way. The two vehicles were traveling at that time at approximately the same rate of speed, the speed of the Breeding car, if anything, being less than that of the bus. The speed of the bus was then reduced to 25 miles per hour, the bus driver apparently realizing the dangerous condition of the highway. While the bus was traveling at that reduced speed and when the car was approximately 170 feet away, the driver of the bus saw it begin to skid and slide toward his side of the highway but, although proceeding up grade, he did not apply his brakes sufficiently to slide the wheels of the bus and while traveling a distance of 85 feet from the time he first saw the Breeding car in difficulty until the collision occurred, according to his own testimony, reduced its speed by only 10 miles per hour or from 25 miles per hour to 15 miles per hour. The jury could find, from the physical facts, that the bus was still traveling when the collision occurred at a speed which prevented the driver from bringing it to a stop until it had traveled approximately 60 feet and that the driver made no effort to get his bus off the pavement until after the collision occurred although photographs appearing in the record indicate that the bus could have crossed the ditch as well at some point north of the point of collision.

We are not here concerned with the question of whether the plaintiffs' intestates were initially guilty of contributory negligence. For present purposes that is assumed. Nor are we required to deal with the question of whether the driver's duty to take steps to avoid the collision began when, by the exercise of reasonable care,

he should have discovered the peril. He admits that he saw the Breeding car when it first began to skid. The question is: Did the driver of the bus, after the car skidded, exercise ordinary and reasonable care to so direct the movements of the bus as to avert a collision if reasonably possible without exposing his passengers to undue risk of injury? If not, the bus driver's negligence becomes the proximate cause of the collision and resulting injuries. Todd v. Cincinnati, etc., R. Co., 135 Tenn. 92, 185 S. W. 62, L. R. A. 1916E, 555; Tennessee Electric Power Co. v. Day, 10 Tenn. App. 334; Memphis St. Ry. Co. v. Roe, 118 Tenn. 601, 192 S. W. 343; Harbor v. Wallace, 31 Tenn. App. 1, 211 S. W. (2d) 172; 10 Tenn. Law Rev. No. 1, p. 51.

■ Under the doctrine of last clear chance it is not of determinative consequence how short an interval occurs between the negligent act of plaintiff and that of defendant so long as the latter had time to avert the danger by the exercise of ordinary care. Clark v. Wilmington & W. R. Co., 109 N. C. 430, 14 S. E. 43, 14 L. R. A. 749. The doctrine implies, however, that there must be time sufficient for defendant to act effectually upon the impulse to save another from injury. Instantaneous action is seldom to be expected. Annotation 119 A. L. R. 1048.

■ A situation most favorable to the application of the doctrine is in cases where actual knowledge by defendant of the plaintiff's extremity concurs with plaintiff's physical inability to extricate himself from the danger. Annotation 119 A. L. R. 1052; Annotation 171 A. L. R. 375.

■ ■ It requires no argument to demonstrate that a person in a skidding automobile on a slick pavement falls within the category of persons caught in a peril from which escape is likely to be impossible, especially if

there is other traffic in striking distance, and there remains only the question of whether the bus driver exercised ordinary care to avoid the collision after discovery of the peril. And if there is room for reasonable minds to disagree on that question the cases were properly submitted to the jury. Tennessee Cent. Ry. Co. v. Hayes, 9 Tenn. App. 116; 65 C. J. S., Negligence, Section 263, page 1181.

■ ■ ''The terms 'ordinary care' and 'reasonable prudence' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury under proper instructions from the court. It is their province to note the special circumstances and surroundings of each . . . case, and say whether the conduct of the parties in that case is such as would be expected of reasonably prudent men . . . When a given state of facts is such as reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury.'' Knoxville Traction Co. v. Brown, 115 Tenn. 323, 330, 89 S. W. 319, 320.

■ We think reasonable minds could disagree as to whether the driver of the bus exercised ordinary care under all the circumstances of this case and there was no error in refusing to direct verdicts for the Bus Company.

■ It is said the court erred in permitting counsel for plaintiffs to question L. B. Garrison, driver of the bus, as to whether he could have stopped his bus within 75 feet. The question was never answered and, if error, the ruling was harmless. The same may be said with respect

to a similar question propounded to the witness E. D. Smith.

Error is also assigned to the action of the court in sustaining an objection to the testimony of the witness Davis as to what Garrison, the driver of the bus, related to him as to how the accident occurred. It is said this was error, first, because the objection interposed by counsel for plaintiffs failed to assign any ground for the objection. While it is true the record fails to show the basis of the objection, the remarks of the court in sustaining the objection show that the testimony offered was excluded as "self-serving declaration." We think this was sufficient. It is next insisted that the evidence was competent as a part of the res gestae and, finally, that it was competent as being confirmatory of Garrison's testimony as a witness. There is no showing that it was offered for either purpose. So far as appears, it was a mere narrative of past events and not competent as words instinctively spoken by a participant under the immediate spur of the transaction or event. Street Railroad Co. v. Howard, 102 Tenn. 474, 478, 479, 52 S. W. 864. The declarant had a motive for making his actions appear in a favorable light when he talked with Sheriff Davis. Two people had been killed giving rise to a possibility of criminal prosecution. Under the well established rule confirmatory statements are not admissible under such circumstances. Legere v. State, 111 Tenn. 368, 77 S. W. 1059.

Defendant insists, finally, that the Court erred in not sustaining its motion to dismiss the suit of Thomas, Admrx., on jurisdictional grounds after the plaintiff (in that case) had taken a voluntary non-suit as to Chisam, Administrator of Mrs. Breeding's estate, originally sued as a joint defendant. It is argued that since it was

brought into the case by counterpart summons from Bledsoe County served by the Sheriff of Davidson County, the County of its situs, the action being transitory should also have been dismissed as to it.

■■ We think the motion was properly overruled. Plaintiff's right to sue Shortway Bus Lines in Bledsoe County turned on whether the action was brought in good faith against Chisam, Administrator, as a joint defendant having a real and antagonistic interest in the suit. Taylor v. McCool, 183 Tenn. 1, 189 S. W. (2d) 817. That was not a matter appearing upon the face of the record, as counsel seem to think, but a matter which could only be developed under a plea in abatement as an issue of fact. Even if a motion to dismiss was proper, bad faith was not established as a matter of law by the subsequent taking of a non-suit.

■■ The trial judge reduced the Wheeler verdict from $10,000 to $5,000 doubtless on the idea that Mrs. Wheeler being 83 years of age, in the absence of proof showing special capacity for one of that age, could not be expected to have a future earning power justifying a verdict for $10,000. The action of the trial court in this respect is entitled to great weight on appeal. City of Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2d) 612. Under all the circumstances, we are of opinion his action in this regard should not be overturned.

We find no error and it results that all assignments are overruled. The judgments will be affirmed and costs taxed to the Shortway Lines and surety.

Hale and Howard, JJ., concur.