JAMES CASHEN v. CAMDEN FIRE INS. ASS'N.
ADEN RAMSEY v. CAMDEN FIRE INS. ASS'N.—348
S. W. (2d) 883.

Eastern Section. March 16, 1961.

Certiorari Denied by Supreme Court July 26, 1961.

Noe & Reed, Morristown, Porter & Porter, Newport, for plaintiff-in-error.

Fred L. Myers, Edward F. Hurd, Newport, for defendants-in-error.

COOPER, J. In these consolidated actions, the parties will be referred to as they appeared below. The plaintiff,

James Cashen, was the owner of a frame building located on the Asheville Highway, in upper Del Rio, Cocke County, Tennessee. The building was leased to the plaintiff, Aden Ramsey, to be used as a restaurant. The defendant Insurance Company issued two fire insurance policies on May 15, 1958, covering the building and its contents. One policy was in the amount of $2,000 and insured the plaintiff Cashen's building "occupied as a restaurant"; the other was for $2,500, and insured the plaintiff Ramsey's restaurant equipment and supplies. The term of both policies was five years, and the premiums were due annually. The building and its contents were destroyed by fire on February 1, 1960. The plaintiffs made demand on the defendant Insurance Company for payment under the terms of their policies. When payment was refused, these suits were brought seeking to recover the face amount of the policies and the statutory penalty provided by T. C. A. Sec. 56-1105.

The defendant Insurance Company filed a plea of nil debit and non assumpsit and specially plead that they were not liable under the terms of the policies as the premises insured had been vacant or unoccupied for more than sixty consecutive days before they were destroyed by fire, and that this vacancy or unoccupancy suspended the insurance coverage.

The plaintiffs did not file a written replication to the pleadings of the defendant but upon trial of the cases, the plaintiffs insisted that the premises had not been vacant or unoccupied for a period of more than sixty consecutive days before the fire, and that if they had, the forfeiture or cancellation provision relating to "vacancy" or "unoccupancy" had been waived by the defendant.

After hearing the proof, the court directed a verdict for the defendant on the issue of the statutory penalty and submitted the other issues to the jury. The jury returned a verdict for $2,000 in favor of the plaintiff Cashen and a verdict for $2,500 in favor of the plaintiff Ramsey. The defendant appealed.

The defendant's assignments of error 1 through 4 are directed at the court's action in refusing to direct a verdict in favor of the defendant at the close of the proof and in submitting the issues to the jury. It is the insistence of the defendant that the undisputed evidence disclosed that the building in question had been unoccupied for a period of more than sixty days preceding the fire, and that no permission had been asked by the plaintiffs or granted by the defendant for a vacancy permit, and, therefore, under the terms of the policy the coverage was suspended at the time of the fire.

█ The term "unoccupied" as used in fire insurance policies implies the absence of an occupant of the kind and during the time indicated by the terms and descriptions in the policy; and whether the use actually made of a building constitutes "occupancy" depends upon the nature and character of the building, the purpose for which it is designed, and the use contemplated by the parties as expressed in the insurance contract. See annotation 158 A. L. R. 897 and cases cited therein.

In 29A Am. Jur., Insurance, Sec. 907, page 112, the text states:

"Generally, the term 'occupied' implies a substantial and practical use of the insured building for the purposes for which it is intended and as contemplated by the policy; and the terms 'unoccupied,'

'vacant and unoccupied', and 'vacant or unoccupied,' imply a situation in which the insured building or premises are without an occupant of the kind, and during the time, contemplated by the intention of the parties, as indicated by the terms and descriptions of the policy.''

In considering assignments 1 through 4 on appeal, this Court in its review does not weigh the evidence, but considers only whether there is any material evidence to support the verdicts, and in such review we are required to take the strongest legitimate view of all the evidence favorable to the plaintiffs, disregard all to the contrary, and indulge all reasonable inferences to uphold the verdicts. Kunk v. Howell, 40 Tenn. App. 183, 289 S. W. (2d) 874, 73 A. L. R. (2d) 1304; Cherry v. Sampson, 34 Tenn. App. 29, 232 S. W. (2d) 610; Short Way Lines v. Thomas, 34 Tenn. App. 641, 241 S. W. (2d) 875.

Following these admonitions, we find that the evidence in this case discloses that the defendant issued the policies in question on May 15, 1958, through its agent, Fred T. Hardy, insuring the building and the contents as a restaurant. The plaintiff Ramsey paid the annual premium on his policy on the date it was issued. The plaintiff Cashen paid one-half the annual premium on the date the policy was issued, it being understood that the remaining part of the premium would be paid six months after the policy was issued. Fred T. Hardy, as agent for the defendant, remitted the full premium due the defendant at the time the policy was issued.

The policies provided that the building was to be used as a restaurant and contained the following provision:

"Conditions Suspending Or Restricting Insurance.

"Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring

\* \* \* \* \* \*

"(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days;"

The plaintiff Ramsey so conducted the restaurant business that its operation was enjoined as a public nuisance on October 8, 1959 by an order of the Judge of the 2d Judicial Circuit. The injunction and its attendant "padlock" were reported in the weekly newspaper of Cocke County and the articles were read by Fred T. Hardy, the agent who sold and issued the policies for the defendant company. The article actually reporting the padlocking was dated Thursday, October 8, 1959, and was as follows:

"Three Places Padlocked Here. Three Cocke County roadhouses were ordered padlocked today in the Circuit Court. They are the Hill Top, located on the Asheville Highway [the plaintiff's premises], in upper Del Rio, a new place about one-half a mile above the Cosby Post Office, and a block house in the Jim Town section. Judge George B. Shepherd ordered the sheriff to padlock the places immediately, adding that the owners be allowed to remove all legal and personal property, in a reasonable time. The sheriff indicated that the places would be padlocked later today. Nuisance bills were drawn up by the Attorney General's office after complaints were made, and affidavits obtained. Charges of gambling, liquor sales, etc. were made."

The above article was all the notice that the agent of the defendant had concerning the cessation of business in the building.

After the premises were padlocked, the plaintiff Ramsey testified that he left the restaurant equipment stored in the building and he was never again on the premises. The plaintiff Cashen testified that he had access to his building through the rear door after the padlock proceedings; that he visited the premises almost daily as he was planting several hundred boxwoods near the building and used the back room to store his tools and equipment.

On November 7, 1959, approximately one month after the building was padlocked, plaintiff Cashen paid the amount still due on his annual premium. He did not tell the agent or the employees of the agency that his building was still padlocked and/or unoccupied.

There was no further contact between either plaintiff and the defendant's agent. Neither plaintiff gave notice to the defendant's agent of the padlocking and/or unoccupancy.

■■ From the above evidence it is clear that the parties contemplated that the insured premises would be used as a restaurant, which would, of necessity, require the presence of plaintiff Ramsey or his employees during the major part of each day and thus reduce the risk of loss by fire during the time of actual occupancy. It is equally clear that the only use made of the building for 113 days prior to the fire was the storage of restaurant equipment and supplies and the storage of tools used by the plaintiff Cashen in working land in the vicinity of

the building. While the plaintiff Cashen did visit his building almost daily in order to secure or store the tools he was using in planting boxwoods nearby, we are of the opinion that the occupancy of a restaurant requires more than these casual visits, and the storing of personal property in the building did not constitute the occupancy contemplated by the parties and as expressed in the fire insurance policies. See annotation 158 A. L. R. 895 and cases cited therein; also cases cited in 29A Am. Jur., Insurance, Sec. 915, page 118. This being true, the building was "unoccupied", within the terms of the policy, from the date of the padlocking to the fire—a period beyond that stipulated in the policy. Where the undisputed facts as naturally interpreted show unoccupancy, it becomes the duty of the Court to declare a verdict for the insurer. Stivers v. National American Ins. Co., 9 Cir., 247 F. (2d) 921; Moore v. Phoenix Fire Ins. Co., 64 N. H. 140, 6 A. 27, 10 Am. St. Rep. 384. The court therefore should have sustained the defendant's motion for a directed verdict in both cases.

It is strongly insisted by plaintiff Cashen that the defendant had knowledge of the breach of the "non-occupancy" provision in the fire insurance policy and waived the forfeiture provision by its failure to act.

■ Provisions and conditions relating to the occupancy of the insured premises are inserted for the benefit of the insurer and can be waived by the insurer. Carolina Ins. Co. of Wilmington, N. C., v. St. Charles, 20 Tenn. App. 342, 98 S. W. (2d) 1088.

It is said in 92 C. J. S. under the title "Waiver", at page 1056, et seq., that:

"The essential elements of a waiver are knowledge and intent, and both are involved, since intention necessarily involves knowledge.

"In order to constitute a waiver there must be knowledge of the existence of the right, benefit, or advantage in question, and intention to relinquish it, or such conduct as warrants an inference of relinquishment, and to create a waiver by estoppel, knowledge of the existence of the right and the intention to relinquish it must concur." See also 56 Am. Jur., Waiver, Sec. 12, p. 113.

In the case of Webb v. Board of Trustees of Webb School, 38 Tenn. App. 173, 201, 271 S. W. (2d) 6, 19, Judge Howell, speaking for this Court (Middle Section) stated:

"* * * waiver of a legal right must be evidenced by a clear, unequivocal and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part, and that it cannot be made out by acts of uncertain implication, but ought to clearly appear in order to constitute a waiver of the contract benefit. Our courts have sometimes said there must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended. Ross v. Swan, 75 Tenn. 463; Koontz v. Fleming, 17 Tenn. App. 1, 65 S. W. (2d) 821; Charleston, S. C., Mining & Mfg. Co. v. American Agricultural Chemical Co., 126 Tenn. 18, 150 S. W. 1143.

"In Moss v. Aetna Life Ins. Co., 6 Cir., 73 F (2d) 339, 341, it is said that the waiver must be intended by one party and so understood by the other.

"In Baird v. Fidelity-Phoenix Fire Ins. Co., 178 Tenn. 653, 163 S. W. (2d) 384, 140 A. L. R. 1226, it is said that a waiver is an intentional relinquishment of a known right, whereas as estoppel can be maintained only on the ground that by the fault of one party, another has been induced to change his position for the worse in such a manner that it would operate as a virtual fraud on him to allow the party by whom he had been misled to assert the right in controversy."

The burden of proving the facts on which the insured relies to establish a waiver rests upon the insured. Koontz v. Fleming, 17 Tenn. App. 1, 65 S. W. (2d) 821, 56 Am. Jur., Waiver, Sec. 22.

In determining whether or not the defendant had knowledge of the breach of the unoccupancy provision as insisted by the plaintiff, the knowledge of or notice to a local agent of an insurance company is knowledge of or notice to the company employing such agent. T. C. A. Sec. 56-706; Life & Guaranty Ins. Co. v. King, 137 Tenn. 685, 195 S. W. 585; Maryland Casualty Co. v. McTyler, 150 Tenn. 691, 266 S. W. 767, 48 A. L. R. 1168; Hayes & Sons v. Stuyvesant Ins. Co., 194 Tenn. 35, 250 S. W. (2d) 7; McCaleb v. American Ins. Co. of Newark, N. J., 205 Tenn. 1, 325 S. W. (2d) 274.

In the case of Commercial Standard Ins. Co. v. Paul, 35 Tenn. App. 395, 402, 245 S. W. (2d) 775, 779, it is stated:

"In matters pertaining to insurance the insured deals exclusively with the insurer's agent. The insurer cannot deal with its patrons in any other way. Justice and law therefore require that the insurer shall be held to sanction what the agent agrees to

and upon which the insured relies, and knowledge of matters affecting the risk or conditions of the policy acquired by the agent in soliciting the insurance is the knowledge of the insurer.''

 It appears from the record that the only knowledge or notice had by the defendant's agent relative to the unoccupancy of plaintiff Cashen's building was the newspaper article of October 8, 1959 reporting the padlocking of the restaurant as set out above. This was not knowledge of the breach of the unoccupancy provision in the fire insurance policy, nor can it be inferred from this knowledge that the agent knew or should have known that the building would continue to be unoccupied until the insurance coverage was suspended. Further, this knowledge placed no duty upon the agent to investigate to see if the premises were unoccupied, or to see if they remained unoccupied. The terms of the policy placed the positive duty upon plaintiff Cashen to request a ''non-occupancy'' permit in order to keep his insurance in force when it became evident to him that the period of unoccupancy would extend beyond the sixty-day limit set out in the policy. Plaintiff Cashen failed to do this and offered no reason for his failure.

We are of the opinion that the plaintiff has failed to carry the burden of showing that the defendant had knowledge, either actual or implied, of the continued unoccupancy of plaintiff's building, and the subsequent suspension of his insurance coverage. There being no knowledge on the part of defendant, there could be no waiver of the unoccupancy provision.

 It is argued on behalf of plaintiff Cashen that defendant waived the breach of the occupancy provision

when, on November 8, 1959, it accepted a payment on the annual premium on the policy. We cannot agree with counsel's insistence. The record affirmatively shows that the defendant did not have knowledge of the continued unoccupancy of the plaintiff's building at the time the premium was paid. Without knowledge, the acceptance of the premium could not constitute a waiver.

We are of the opinion, therefore, that the trial court was in error in overruling defendant's motions for directed verdicts. Accordingly, judgments below will be reversed and the cases will be dismissed at plaintiff's costs.

McAmis, P. J., and Hale, J., concur.