Avery CARROLL and Wife, Ellinna Ruth Carroll, Plaintiffs-Appellees,

v.

## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals of Tennessee, Western Section.

Feb. 2, 1979.

Certiorari Denied by Supreme Court Sept. 17, 1979.

Charles L. Trotter, Jr., Huntingdon, for defendant-appellant.

G. Robert Radford, Huntingdon, for plaintiffs-appellees.

SUMMERS, Judge.

This case involves the interpretation of a clause in an insurance policy. The plaintiffs-appellees, Avery Carroll and wife, Ellinna Ruth Carroll, were the owners of a house located in Carroll County, Tennessee. This house was covered by an insurance policy issued by the defendant-appellant, Tennessee Farmers Mutual Insurance Company.

On or about August 4, 1977, the house and its contents were totally destroyed by fire. The plaintiffs notified the defendant of this fire, but the defendant denied liability based on the following exclusion in the insurance policy:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring

. . . . .

(b) While a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; . . . .

The plaintiffs sued the defendant, and the case was heard before the chancellor without a jury. The plaintiffs were awarded a judgment against the defendant for the maximum amount of coverage, $10,-000.00, plus interest of six per cent since October 4, 1977, or $438.94. The chancellor dismissed that part of the complaint charging the defendant was guilty of bad faith.

The defendant appealed from the judgment and assigned three errors, the first of which is:

The court erred in holding that the house which burned and which belonged to the plaintiff was not vacant or unoccupied for sixty (60) consecutive days and thus covered under policy D–259622. (BE 44, 45)

Until April 1, 1977, the plaintiffs had lived in their house in Carroll County and used it as their dwelling place. On April 1, 1977, the plaintiffs and their family moved to a new home in Trezevant, Tennessee. Thereafter, the son of the plaintiffs stayed in the house about three weeks. A tenant named Freddie Savage moved in the house the last week of April, 1977, and lived there about a month. After this tenant left around June 1, 1977, no one stayed in the house on a permanent basis.

Roy Tarwater, the insurance agent for this policy, testified that the plaintiff, Mr. Carroll, informed him that his son was going to stay on the farm and occupy this house after his family moved to the new home in Trezevant. The insurance company was not notified after the son of the plaintiffs and/or Mr. Savage vacated the premises and, therefore, never had an opportunity to issue a vacancy permit or cancel the policy as it had a right to do to protect itself.

The plaintiff, Mr. Carroll, testified that he returned to the house in Carroll County to tend to his coon dogs and his garden, bale hay and can vegetables and fruit with his wife. He further testified he had spent the night there several times in June, on July 4 and at some other times, but he was unable to recall the exact dates. At all times from April 1 to August 4, there were some household furniture and effects in the house. Although the plaintiff, Mr. Carroll, gave a statement to the insurance company that the house was unoccupied when it burned, he later said he didn't understand what they meant by the question.

The courts in Tennessee have long recognized that a vacancy clause in a fire policy is reasonable, valid and binding. *Provident Washington Insurance Company v. Reese*, 213 Tenn. 355, 373 S.W.2d 613 (1963). The case of *Cashen v. Camden Fire Ins. Ass'n*, 48 Tenn.App. 470, 348 S.W.2d 883 (1961), is relied on by the defendant in its brief. The exclusion provision in the insurance policy in that case is identical to the exclusion provision at issue in the case at bar.

In the *Cashen* case plaintiff Ramsey leased a building and operated a restaurant therein. On October 8, 1959, this restaurant operation was enjoined as a public nuisance and padlocked by the sheriff. After this plaintiff Cashen, the owner and lessor of the building, visited the premises frequently as he was planting boxwoods near the building. He used the back room of the building to store his tools and equipment. In November, 1959, when plaintiff Cashen paid the remaining premium due on his five year insurance policy on the building, he did not tell the insurance agent that the building was unoccupied. The court in the *Cashen* case said that all the evidence pointed to the fact that the parties contemplated that the insured premises would be used as a restaurant. This would require the presence of the plaintiff Ramsey or his employees during a large part of each day, thereby reducing the risk of loss by fire during the time of occupancy. Even though the plaintiff Cashen did visit the building almost daily, the court was of the opinion these casual visits and the storing of personal property in the building did not constitute the occupancy contemplated by the parties and expressed in the fire insurance policies. That court found the building was unoccupied within the terms of the policy from the date of the padlock until the fire.

The court in *Cashen* further said:

The term "unoccupied" as used in fire insurance policies implies the absence of an occupant of the kind and during the time indicated by the terms and descriptions in the policy; and whether the use actually made of a building constitutes "occupancy" depends upon the nature and character of the building, the purpose for which it is designed, and the use contemplated by the parties expressed in the insurance contract. . . .

*Couch on Insurance 2d*, § 37:836, discusses the word "occupied" in vacancy provisions in insurance policies covering dwellings and says:

The word "occupied," in reference to a dwelling place, means actual use of the

premises by human beings as their customary place of abode, not continuously, but as a place of usual return.

A dwelling may be "occupied" although not put to all the uses to which a dwelling is usually put; the only essential is that it be a usual place of abode, it not being absolutely essential that a person sleep therein.

"Occupancy" of a dwelling house implies an actual use of the house as a dwelling place, that is, something more than a use of it for mere storage. . . .

After a dwelling house has become vacant by removal, temporary visits whereon it is not used as a place of abode do not recreate an occupancy.

The key in the *Couch* definitions appears to be "usual or customary place of abode." After reading the cases and treatises on the subject and applying the above interpretation from *Cashen*, this court is of the opinion that the plaintiffs' Carroll County house which was destroyed by fire on August 4, 1977, was unoccupied as the term was used in the insurance policy.

It is undisputed that prior to the plaintiffs' moving from the premises on April 1, 1977, this building had been used as a residence. It can be said that it was further used as a residence in April, when the son of the plaintiffs stayed there, and in May, when a tenant was living on the premises. However, after June 1, 1977, until the house burned in August, there was no one actually occupying the premises and using it as a residence. Although there was certain personal property stored in the house and the plaintiffs went to the property to care for their dogs and garden and spent the night on several occasions in the house, we do not think this constitutes actually using the building for the purpose for which it was insured—as a residence.

Therefore, this court sustains the first assignment of error of the defendant, making it unnecessary to address the other two assignments of error.

This case is reversed and dismissed. The costs are adjudged against the plaintiffs.

MATHERNE and EWELL, JJ., concur.