## IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

**FILED**

**February 27, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

DAVID LEE WALKER,               )     HAMILTON CIRCUIT
                                )
    Plaintiff/Appellant         )     NO. 03A01-9709-CV-00402
                                )
v.                              )     HON. SAMUEL H. PAYNE
                                )     JUDGE
EXCHANGE INSURANCE              )
COMPANY and CHATTANOOGA         )
INSURANCE AGENCY, INC.,         )
                                )
    Defendants/Appellees        )     REVERSED

R. Dee Hobbs, Chattanooga, for Appellant.

David P. Hawley, Chattanooga, for Chattanooga Insurance Agency, Appellee.

W. Gerald Tidwell, Jr., Chattanooga, for Exchange Insurance Company, Appellee.

## O P I N I O N

INMAN, Senior Judge

This action to recover on a policy of fire insurance was resisted on the ground that the policy was void *ab initio* because the plaintiff denied in his application that a prior policy had been canceled, and because the damaged property had been vacant for more than 60 days in violation of the policy.

The defendants moved for summary judgment and filed the affidavits of (1) *Jean Rice,* adjustor, who testified that the plaintiff stated the property had been vacant for five months before the fire; (2) *Richard Wilson,* an officer of Exchange Insurance Company, who testified that the company did not insure dwellings unoccupied for longer than 30 days; (3) Donnitta Scruggs, independent agent, who testified that the plaintiff contacted the

Chattanooga Insurance Agency about a policy of insurance and when asked if a policy had ever been canceled responded, no; further, when asked about occupancy, he responded that a tenant occupied the property. Scruggs further testified that she inspected the property on August 16, 1994, the date the plaintiff applied for the policy, and that the windows were draped and lights were on, indicating occupancy.

A countervailing affidavit was filed by the plaintiff. *Janice Long,* office manager for the plaintiff, testified that coverage had previously been provided by Shelter Insurance Company, which canceled its policy on account of an unsatisfactory credit report it received on the plaintiff. She testified that she contacted the Chattanooga Insurance Agency on behalf of the plaintiff, and advised them that his prior policy had been canceled. The plaintiff testified during discovery that he told the Chattanooga Agency the house was being renovated and eventually rented, but no time frame was mentioned; that he signed the application with knowledge that he had represented the house as tenant occupied, but assumed a tenant would be living there. Specifically, he testified:

A:    "The only part I filled out on this was my signature.

Q:    Okay. Do you recall being asked a series of questions which constitutes the information on there?

A:    Yes.

Q:    Do you remember being asked whether you had ever had insurance canceled, non renewed or revoked?

A:    I don't recall.

Q:    Okay. If you would look on that application about the mid point, that question appears.

A:    Yes, it does.

Q:    There's a check mark under - - or I believe there's a box there that says no and it's checked no, so you don't recall whether you

had told them you had not been canceled or revoked or non renewed?

A:   I did not tell her that.

Q:   What did you tell her?

A:   I do not recall the exact particulars, but that - - I do not recall her asking the question.

Q:   Okay.  Do you recall discussing the issue of revocation, cancellation or non renewal at all?

A:   With her, no.

·   ·   ·   ·   ·

Q:   . . . that appears to be your signature?

A:   Yes.

Q:   Did you read this application before you signed it?

A:   Yes.

Q:   Okay.  Why didn't you correct this if you knew that you had been canceled?

A:   That was not filled in on the form that I signed.

Q:   So you're saying this isn't the form you signed?

A:   No.  I'm saying that this part was not filled in on the form that I signed.

Q:   So, are you saying that this part on Exhibit One that says Policy History was blank completely, or just this word 'no' that's written in here?

A:   Just the word 'no' that's written right there.

Q:   Did you think to inquire as to why nothing was listed there?

A:   No, I did not.

Q:   Okay.  Well, you knew you had been canceled.  I mean, didn't you think that was important to know, for them to know, if it was on the application?

A:   It was my understanding that she was in full understanding of that fact, that my policy had been canceled, and that's my whole reason for going to them.

Q: I'm going to ask you to look at something that's previously got an Exhibit C on it, but it's actually going to need to be marked, too. It's something from a summary judgment motion. Would you look at this, and if we could, let's just let you mark that Two right now . . . Okay. Take a good look at that and see if you recognize it.

A: Yes, I do.

Q: Okay. That's the letter from Shelter Insurance Company notifying you of your cancellation. Right?

A: Correct.

Q: And that was - - you got that before you applied for insurance through Chattanooga or Acuff-Wirz to get Exchange on the John Ross property. Is that correct?

A: Yes. This arrived the 24th of June. It wasn't until August that I applied.

Q: Okay. Do you know why they canceled you at Shelter?

A: What they say in their letter is in whole or part on the consumer credit report.

· · · · ·

Q: Okay. Under the portion which is a little lower under the Cancellation History that talks about the - - it says Underwriting Information, it says occupancy or occupied and it's checked 'tenant.' Is that correct?

A: Yes.

Q: Now, that was there when you signed the application. Is that right?

A: Correct.

Q: Okay. When you were - - I assume you were asked who was going to be living there. Right?

A: Correct.

Q: And who and what did you say?

A: I explained my situation, that the house was in the process of being renovated, and that as soon as that was completed there would be a tenant in there.

Q: And did you give any time frame for when there would be a tenant in there?

A:    I do not recall a giving a time.

Q:    And is it your testimony today that nobody asked you when it would be occupied?

A:    That would be correct.

Q:    Okay.  Have you ever bought insurance on an unoccupied or vacant house before this?

A:    No.

        .   .   .   .   .

Q:    Okay.  What did you think that meant when you signed the application, that she checked tenant occupied?

A:    That eventually a tenant would be living there.

Q:    That's what you read that to mean?

A:    Yes.

        .   .   .   .   .

Q:    Did you read this policy when you got it?

A:    I read part of it.

Q:    Did you ever read all of it?

A:    No, I did not read all of it.

Q:    Okay.  Did you read this page here that in bold type says: 'Conditions Suspending/Restricting Insurance.  Unless otherwise provided in writing added hereto, this company shall not be liable for loss occurring . . .'  a few . .  jump down here to (b) it says '. . . while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of 30 consecutive days.'  Did you ever read that clause?

A:    I do not recall.

Q:    You don't recall?

A:    (Whereupon, witness moves head from side to side.)

Q:    What part of the policy did you read?  You don't have to tell me page by page, but what part were you interested in?

A:    I was interested in the policy as a whole.  The specifics are beyond my understanding of law, how they were going to apply to my case, this being of course the second policy I've ever seen in my life.

Q: So I understand your testimony today, you don't recall whether or not vacancy or occupancy was discussed when you bought the insurance?

A: This is correct.

Q: Okay. And you don't know whether you ever read the part of the policy about vacancy or occupancy. Is that correct?

A: Correct."

MR. TIDWELL: "That's all I have."

Our review of the findings of fact made by the trial Court is *de novo* upon the record of the trial Court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. R. APP. P., RULE 13(d). There is no presumption of the correctness of the decision of the trial Court on a question of law. *NCNB Nat'l. Bank v. Thrailkill,* 856 S.W.2d 150 (Tenn. Ct. App. 1993).

The plaintiff argues, as to the issue of vacancy, that the defendants had knowledge of the fact that the property was unoccupied, and that it would be rented, thereby creating an issue of fact beyond the reach of summary judgment, and that he is entitled to prove, if possible, a waiver by the defendants of the vacancy provision. As to the issue of a material misrepresentation, the plaintiff argues that since he furnished the agent a copy of the Shelter letter canceling his policy, an issue is thereby presented as to whether the defendants are estopped to rely upon his "no" answer in the application.

It is made clear in *Cashen v. Camden Fire Insurance Ass'n.,* 348 S.W.2d 883 (Tenn. App. 1961) that vacancy provisions together with other provisions can be waived by the insurer. But it is equally clear under well settled principles that unless it can be established by a preponderance of the

evidence that the policy provisions were waived by the defendants, the plaintiff cannot recover.

But summary judgment may not be substituted for a trial, and a trial cannot be conducted by affidavit. If a factual dispute exists creating a genuine issue for trial, summary judgment is inappropriate. *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993). Whether the defendants had actual notice, *prior to the application,* of the Shelter cancellation, and of the fact that the dwelling would be unoccupied for longer than 30 days, are disputed issues of fact properly to be resolved at a trial. Accordingly, the judgment of the trial court is reversed and the case is remanded for trial.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____
Herschel P. Franks, Judge